STATE OF ALABAMA:              CIVIL ACTION NO. 2:06CV-00620-WKW
MONTGOMERY COUNTY:             ANDERSON, MICHAEL D. #156270

### AFFIDAVIT

My name is Paul Whaley II and I am presently employed as the Director of Classification, Alabama Dept. of Corrections, P O Box 301501, Montgomery, Alabama 36130. I am over the age of twenty-one years. I have 28 years' experience with the Alabama Dept. of Corrections, all in the area of inmate classification. I worked at Kilby as the institutional classification specialist for five years managing a caseload as well as performing intake and reclassification duties. Following that, I served 9 ½ years as a member of the Central Review Board where the vast majority of classification determinations statewide relative to placements, programs, custodies, institutional assignments and security levels were made. I have served as the Director of Classification for 13 ½ years. I have attended specialized training with the National Institute of Corrections. I hold Masters' degrees in both Criminal Justice and Counseling. I hold a specialized instructor's certificate (#647) issued by the Peace Officers' Standards and Training Commission. I have given presentations around this state to Circuit Judges, District Attorneys, and attorneys for CLE credit. I am qualified to testify to the following with respect to the issues raised in this pleading.

Pursuant to the directive of the Court to provide specific answers to portions of Anderson's above titled complaint, the following information is provided to address the issues thus unresolved.

In my original affidavit, I never said that Anderson had "demanded" to go to work release. Had Anderson taken the time to read my document, he would have noted that I clearly stated he was never eligible for work release (exhibit A). The issue of "demand" arises from his efforts to litigate consideration for a less restrictive assignment which, in the professional judgment of the Alabama Department of Corrections (ADOC) is not otherwise appropriate. The primary responsibility of the ADOC is to protect the public rather than to cater to the opinions or whims of criminal offenders.

I have never willingly or knowingly used any information I knew to be false to


EXHIBIT 1

Page 2 Anderson, Michael D. #156270

make any decision regarding the classification of any inmate at any time. The ADOC is dependant upon documents furnished to us by the courts and other criminal justice agencies. Whether Anderson agrees with that information or whether he wishes to distance himself from his own actions is his problem, not ours. The information regarding the details of the theft case is a matter or record (exhibit B).

Inmate Anderson is a convicted murderer. He is a repeat offender. He has a documented history of aggressive behavior (exhibit C). This is indicative of predatory behavior. Despite Anderson's wish to show that there was some hidden agenda behind my characterization of him as a societal predator, Webster's dictionary recognizes predatory people and defines predatory behavior as plundering, robbing, or exploiting others.(exhibit D). Anderson's record fits this characterization. Webster's does not delineate this definition by race, merely by behavior. Anderson is indeed still dangerous. He has been criminally active since 1980 and his offenses have progressed to the point where he committed murder. Since incarceration, Anderson has also violated prison rules.

I take particular exception to Anderson's assertion that, in some manner, I have used his race against him. Race and sex are used by the ADOC for the purpose of appropriate identification for reasons of security. For the purpose of classification, it matters not to me if the offender is black, white, or green. All are criminals. If Anderson chooses to associate his situation with his race, he is entitled to whatever rationalization brings him relief. Such a pathetic effort, however, has no validity in the real world of correctional classification.

I will not dignify Anderson's characterization of me or of the Alabama Department of Corrections except to say that slavery ended in America 140 years ago. Slavery was not a matter of choice. Crime and incarceration, however, is. Anderson has willingly made that choice twice now and in doing so has cost another human being his life, an act which does not appear to trouble him in the least. Such a lack of remorse or responsibility is troubling and indicative of risk.

All less restrictive placements, programs, and custodies offered by the Alabama Department of Corrections are privileges to which no offender enjoys any right or entitlement of consideration, let alone participation. The primary responsibility of the

Page 3 Anderson, Michael #156270

ADOC is to insure the protection of the public. That Anderson has completed barbering, life skills, and an 8 week substance abuse program is commendable, but comes nowhere to balancing out the scales when compared to his record and his crimes. Anderson's race has never been and will never be a factor in any determination of his classification. For the record, however, Ms. Coleman, a member of the CRB being sued is black. Further, inmate Anderson did exercise his right of appeal of the classification denial and that appeal was denied by Ms. Golson, Assistant Director of Classification, who is also black (exhibit E). Any belief Anderson has that race has ever played a factor in his classification is a rationalization of his own creation which has no merit whatsoever.

    No right of this criminal has been violated.

_____
Paul Whaley II

STATE OF ALABAMA:
COUNTY OF MONTGOMERY:
SWORN TO AND SUBSCRIBED before me this the 26th day of July, 2006.

_____
Notary Public

STATE OF ALABAMA:           CIVIL ACTION NO. 06-895
MONTGOMERY COUNTY:          ANDERSON, MICHAEL #156270A

## AFFIDAVIT

My name is Paul Whaley II and I am presently employed as the Director of Classification, Alabama Dept. of Corrections, P O Box 301501, Montgomery, Alabama 36130. I am over the age of twenty-one years. I have 27 years' experience with the Alabama Dept. of Corrections, all in the area of inmate classification. I worked at Kilby as the institutional classification specialist for five years managing a caseload as well as performing intake and reclassification duties. Following that, I served 9 ½ years as a member of the Central Review Board where the vast majority of classification determinations statewide relative to placements, programs, custodies, institutional assignments and security levels were made. I have served as the Director of Classification for 13 years. I have attended specialized training with the National Institute of Corrections. I hold Masters' degrees in both Criminal Justice and Counseling. I hold a specialized instructor's certificate (#647) issued by the Peace Officers' Standards and Training Commission. I have given presentations around this state to Circuit Judges, District Attorneys, and attorneys for CLE credit. I am qualified to testify to the following with respect to the issues raised in this pleading.

Inmate Michael Anderson #156270A is a violent and repeat criminal currently serving life in prison for murder.

In his complaint, inmate Anderson challenges the validity of his custody change and alleges discrimination because he was not handed a transfer to a less restrictive institution merely because he so demands. He further attempts to ameliorate the severity of his prior acts of violence by not only citing how long ago they occurred, but alleging that there was no victim injury. Finally, he rationalizes his crime of murder by alleging he was merely "protecting" his son.

What are the facts? There is no issue of "validity" of a custody change because none occurred. Further, the parole review upon which Anderson seems to place so much stock is but his first on a life sentence and the probability that parole will be granted then




PRESENT OFFENSE

COUNTY, COURT AND CASE NUMBER:

Mobile County Circuit Court Case Number CC89-2983

OFFENSE:

Theft Of Property 1st Degree

SENTENCE:

Five years imprisonment split to serve one year balance suspended five years probation.

DATE OF SENTENCE:

3/28/90

DETAILS OF OFFENSE:

On September 15, 1989 the victim Janice ▮▮▮▮ reported to Mobile Police she had been shot and robbed by Michael Anderson. Miss ▮▮▮ would later tell police she had known Anderson for several days. She stated they were both at 7117 Third Street, Mobile, Alabama on September 15, 1989 at approximately 3:40 p.m. Miss ▮▮▮ told police that at the above time Anderson had asked her to use her truck. She stated she refused at which time Mr. Anderson pulled a pistol on her. Miss ▮▮▮ would later tell police that the pistol was hers and was in the truck. She states Anderson approached her with a pistol and they began struggling. The gun discharged striking her on her left index finger. She stated that during the struggle Anderson dropped the gun but then pulled a knife on her. Anderson retrieved the gun and also took the truck keys to her 1989 S-10 Chevy Pick-up.

Miss ▮▮▮ states Anderson and another subject known to her only as "Hawk" left in her vehicle heading north on Cody Road. She immediately notified Mobile Police and provided them with a description of the truck.

On the same day at approximately 5:50 p.m. Mobile Police Officer P.A. Larison observed the aforementioned truck driven by Anderson at the corner of Main and Broadway. Officer Larison pulled the truck over and placed Anderson under arrest charging him with Robbery 1st Degree and Assault 2nd Degree.

The charges of Assault was later dismissed and subject was indicted for Theft Of Property 1st Degree, the present offense.

SERIOUS PHYSICAL INJURY BARRING PAROLE:

None

SUBJECT'S STATEMENT:

Mr. Anderson stated that he and Miss ▮▮▮ had been going together for several

-2-

Subject's Statement:

As the subject is currently in the state penitentiary, subject's statement is unavailable.

Case Status of Co-Defendants:

N/A

Victim Notification Information:

Beverly Hawthorne

Victim Impact:

Mr. Hawthorne lost his life in this incident.

Location of Offense:

City of Mobile, Alabama.

Court Ordered Restitution:

$2,212.65

RECORD OF ARREST(S)

Prior Arrest Record:

| Date | Agency | Offense | Disposition |
|---|---|---|---|
| 07-02-80 | PD Mobile, AL | Assault 3rd ✓ | 07-02-80 Convicted 3 days to serve |
| 09-06-81 | PD Prichard, AL | No Driver's License | $50 fine and cost |
| 05-05-82 | PD Prichard, AL | Disorderly Conduct | Nolle Prossed |
| 05-13-82 | PD Prichard, AL | 1) No Driver's License | $50 fine and cost |
|  |  | 2) Reckless Driving | Dismissed |
| 09-07-81 | PD Prichard, AL | Robbery 3rd Degree ✓ | 10 yrs. impris. susp. 5 yrs. prob. Revoked: 11-16-89 |
| 10-30-82 | PD Prichard, AL | Disorderly Conduct ✓ | Dismissed |
| 01-18-83 | PD Prichard, AL | Assault 3rd Degree ✓ | Dismissed |
| 08-17-88 | PD Mobile, AL | Poss. of a Sawed Off Shotgun | Nolle Prossed |
| 09-15-89 | PD Mobile, AL | TOP 1st Degree (CC89-2988) | 03-28-90 Sent. 5 yrs. split 1 yr. to serve, probation 5 years |
| 09-15-89 | SO Mobile County | Assault 2nd Degree ✓ | No Billed |
| 01-12-95 | PD Prichard, AL | Running Red Light | 03-13-95 Convicted |



| | | | |
|---|---|---|---|
| 03-09-95 | SO Washington County | Speeding 75/55 MPH Zone | 05-08-95 Convicted |

Subsequent Arrest Record:

| | | | |
|---|---|---|---|
| 09-08-96 | SO Mobile County | DUI - Liquor | 01-22-97 Convicted |
| 09-08-96 | SO Mobile County | Driving While Suspended | 01-22-97 Convicted |

## PERSONAL/SOCIAL HISTORY

Subject:

Michael Dewayne Anderson was born on March 30, 1962 to JoAnn Anderson in Leroy, Alabama. Subject was raised by his aunt and uncle, George and Johnnie Mae Martin from a very early age.

Marital Status/History:

Anderson was married to Gwendolyn Anderson. One (1) child was born to this union Michael Dewayne Anderson, Jr. date of birth October 1981. Anderson has another son, Michael Dewayne Braggs, by Yolanda Braggs.

Health:

Anderson is in good health with no physical disabilities. He admits to the use of marijuana.

Education:

Anderson completed the twelfth grade at Continuous Learning Center after being expelled from Vigor High School for bringing a gun on campus.

Financial Status:

Information not available.

Employment History:

Anderson has worked for B E & k Construction as a laborer. Anderson's employment record shows majority of the time he was unemployed.

Military Record:

None

## OFFENDER'S FAMILY

Father:

Leroy Wilson information unknown.

Mother:

JoAnn Anderson information unknown.

Guardian:

Johnnie Mae Martin, resides at 224 East Turner Road, Prichard, Alabama.

pre·ci·os·i·ty (presh′ē äs′ə tē) n., pl. -ties [ME. preciosite < MFr. preciosité < L. pretiositas < pretiosus: see ff.] great fastidiousness, overrefinement, or affectation, esp. in language

pre·cious (presh′əs) adj. [ME. < OFr. precios < L. pretiosus < pretium, a PRICE] 1. of great price or value; costly 2. of great desirability; held in high esteem [precious rights] 3. beloved; dear 4. very fastidious, overrefined, or affected, as in behavior, language, etc. 5. very great [a precious liar] —adv. [Colloq.] very —pre′cious·ly adv. —pre′cious·ness n.

precious stone a rare and costly gem

prec·i·pice (pres′ə pis) n. [Fr. précipice < L. praecipitium < praeceps, headlong < prae-, before (see PRE-) + caput, a head (see CHIEF)] 1. a vertical, almost vertical, or overhanging rock face; steep cliff 2. a greatly hazardous situation, verging on disaster

pre·cip·i·tan·cy (pri sip′ə tən sē) n., pl. -cies quality, fact, or instance of being precipitate; great haste; rashness: also pre·cip′i·tance n.

pre·cip·i·tant (-tənt) adj. [L. praecipitans, prp. of praecipitare: see ff.] same as PRECIPITATE —n. a substance which, when added to a solution, causes the formation of a precipitate —pre·cip′i·tant·ly adv.

pre·cip·i·tate (pri sip′ə tāt′; also, for adj. & n., -tit) vt. -tat′ed, -tat′ing [< L. praecipitatus, pp. of praecipitare: see PRECIPICE] 1. to throw headlong; hurl downward 2. to cause to happen before expected; warranted, needed, or desired; bring on; hasten [to precipitate a crisis] 3. Chem. to cause (a slightly soluble substance) to become insoluble, as by heat or a chemical reagent, and separate out from a solution 4. Meteorol. to condense (vapor, etc.) and cause to fall as rain, snow, sleet, etc. —vi. 1. Chem. to be precipitated 2. Meteorol. to condense and fall as rain, snow, sleet, etc. —adj. [L. praecipitatus: see the v.] 1. falling steeply, rushing headlong, flowing swiftly, etc. 2. acting, happening, or done very hastily or rashly; impetuous; headstrong 3. very sudden, unexpected, or abrupt —n. [ModL. praecipitatum] a substance that is precipitated out from a solution —SYN. see SUDDEN —pre·cip′i·tate·ly adv. —pre·cip′i·tate·ness n. —pre·cip′i·ta′tive adj. —pre·cip′i·ta′tor n.

pre·cip·i·ta·tion (pri sip′ə tā′shən) n. [MFr. précipitation < L. praecipitatio] 1. a precipitating or being precipitated; specif., a headlong fall or rush 2. precipitancy; rash haste; impetuosity 3. a bringing on suddenly; acceleration 4. Chem. a) a precipitating or being precipitated from a solution b) a precipitate 5. Meteorol. a) a depositing of rain, snow, sleet, etc. b) rain, snow, sleet, etc. c) the amount of this

pre·cip·i·tin (pri sip′ə tin) n. [PRECIPIT(ATE) + -IN] an antibody produced in the blood of an animal injected with a soluble antigen: when the antigen is added to blood serum from such an animal, a precipitate forms

pre·cip·i·tin·o·gen (pri sip′ə tin′ə jən) n. [prec. + -o- + -GEN] the antigen that produces a precipitin —pre·cip′i·tin′o·gen′ic (-jen′ik) adj.

pre·cip·i·tous (pri sip′ə təs) adj. [MFr. precipiteux < LL. praecipitosus < L. praeceps: see PRECIPICE] 1. steep like a precipice; sheer 2. having precipices 3. same as PRECIPITATE —SYN. see STEEP[1] —pre·cip′i·tous·ly adv. —pre·cip′i·tous·ness n.

pré·cis (prā sē′, prā′sē) n., pl. pré·cis′ (-sēz′, -sēz) [Fr.: see ff.] a concise abridgment; summary; abstract —vt. to make a précis of

pre·cise (pri sīs′) adj. [MFr. precis < L. praecisus, pp. of praecidere, to cut off, be brief < prae-, before (see PRE-) + caedere, to cut (see -CIDE)] 1. strictly defined; accurately stated; definite 2. speaking definitely or distinctly 3. with no variation; minutely exact [the precise amount] 4. a) that strictly conforms to usage, etc.; scrupulous; fastidious b) too fastidious; finicky —SYN. see CORRECT, EXPLICIT —pre·cise′ness n.

pre·cise·ly (-lē) adv. in a precise manner; exactly: also an affirmative reply, equivalent to "I agree"

pre·ci·sian (pri sizh′ən) n. a person who is strict and precise in observing rules or customs, esp. of religion; specif., a 16th- or 17th-cent. English Puritan

pre·ci·sion (pri sizh′ən) n. [Fr. < L. praecisio, a cutting off] 1. the quality of being precise; exactness; accuracy; definiteness 2. the degree of this —adj. 1. characterized

---

pre·co·cious (-kō′shəs) adj.[< L. praecox < praecoquere, to mature, COOK] 1. developed or matured to a point beyond that which is normal for the age [a precocious child] 2. of or showing premature development —pre·co′cious·ly adv. —pre·co′cious·ness, pre·coc′i·ty (-käs′ə tē) n.

pre·cog·ni·tion (prē′käg nish′ən) n. [LL. praecognitio < L. praecognitus, pp. of praecognoscere, to foreknow < prae-, PRE- + cognoscere, to know: see COGNITION] the supposed perception of an event, condition, etc. before it occurs, esp. by extrasensory powers —pre·cog′ni·tive (-nə tiv) adj.

pre-Co·lum·bi·an (prē′kə lum′bē ən) adj. of any period in the Western Hemisphere before Columbus discovered America

pre·con·ceive (prē′kən sēv′) vt. -ceived′, -ceiv′ing to form a conception or opinion of beforehand

pre·con·cep·tion (-sep′shən) n. [ML. preconceptio] 1. the act of preconceiving 2. a preconceived idea or opinion 3. bias or prejudice

pre·con·cert (-kən surt′) vt. [PRE- + CONCERT, v.] to arrange or settle beforehand, as by agreement

pre·con·di·tion (-kən dish′ən) n. a condition required beforehand if something else is to occur, be done, etc. —vt. to prepare (someone under certain conditions to behave, react, etc. in a certain way under certain conditions)

pre·co·nize (prē′kə nīz′) vt. -nized′, -niz′ing [ME. preconisen < ML. praeconizare < L. praeco (gen. praeconis), public crier (prob. contr. < praedicator, a proclaimer: see PREACHER) + LL. -izare, -IZE] 1. to proclaim or extol in public 2. to approve and announce the name of (a new bishop) publicly: said of the Pope

pre·con·scious (prē kän′shəs) adj. Psychoanalysis of or pertaining to that part of a person's mental activity which is not immediately conscious, but which can be easily recalled —the preconscious preconscious mental activity: see also CONSCIOUS

pre·con·tract (prē kän′trakt; for v., usually prē′kən trakt′) n. a previous contract, as, formerly, of marriage —vt. 1. formerly, to betroth beforehand 2. to agree to by advance contract

pre·cook (-kook′) vt. to cook partially or completely, for final preparation at a later time

pre·cool (prē kōōl′) vt. to cool or refrigerate before packing or shipment

pre·crit·i·cal (-krit′i k'l) adj. [PRE- + CRITICAL] coming before a critical period

pre·cur·sor (pri kur′sər) n. [L. praecursor < praecurrere, to run ahead: see PRE- & CURRENT] 1. a person or thing that goes before; forerunner; harbinger 2. a predecessor, as in office 3. a substance that precedes and is the source of another substance —SYN. see FORERUNNER

pre·cur·so·ry (-sə rē) adj. [L. praecursorius] 1. serving as a precursor, or harbinger; indicating something to follow 2. introductory; preliminary

pred., predicate

pre·da·ceous, pre·da·cious (pri dā′shəs) adj. [< L. praedari, to prey upon (< praeda: see PREY) + -ACEOUS] preying on other animals; predatory —pre·dac′i·ty (-das′ə tē), pre·da′cious·ness, pre·da′ceous·ness n.

pre·date (prē dāt′) vt. -dat′ed, -dat′ing 1. to date before the actual date 2. to come before in date

pre·da·tion (pri dā′shən) n. [L. praedatio < praeda, PREY] 1. the act of plundering or preying 2. the method of existence of predatory animals

pred·a·tor (pred′ə tər) n. a predatory person or animal

pred·a·to·ry (pred′ə tôr′ē) adj. [L. praedatorius < praeda, a PREY] 1. of, living by, or characterized by plundering, robbing, or exploiting others 2. living by capturing and feeding upon other animals; predacious —pred′a·to′ri·ly adv. —pred′a·to′ri·ness n.

pre·de·cease (prē′di sēs′) vt., vi. -ceased′, -ceas′ing to die before (someone else or, rarely, some event)

pred·e·ces·sor (pred′ə ses′ər, prēd′ə ses′-; chiefly Brit., prē′di-) n. [ME. predecessour < MFr. predecesseur < LL. praedecessor < L. prae-, before (see PRE-) + decessor, retiring officer < decessus, pp. of decedere, to go away, depart < de-, from + cedere, to go: see CEDE] 1. a person who precedes or preceded another, as in office 2. a thing replaced by another thing, as in use 3. [Now Rare] an ancestor; forefather



## CLASSIFICATION APPEAL FORM

NAME: Michael D. Anderson   AIS#: 156270 I-21-31   INSTITUTION: Bullock

DATE: February 15, 2006

I. CLEARLY STATE THE DECISION THAT IS BEING APPEALED: I am appealing the decision made by the Central Review board prohibiting me from transferring to an honor camp. (See Attached Sheet)

II. BRIEFLY AND CLEARLY STATE YOUR REASONS FOR APPEALING: See Attached Sheet;

_Michael D. Anderson_
INMATE SIGNATURE

III. COMMENTS OF WARDEN/CLASSIFICATION PERSONNEL: See Attached PR dated (12/14/05)

_[signature]_ 2/28/06                    _[signature]_ 2/16/06
WARDEN SIGNATURE/DATE                    CLASSIFICATION SIGNATURE/DATE

DO NOT WRITE BELOW THIS LINE

APPEAL GRANTED: _____   DENIED: _[signature]_

DATE: 4-7-06

COMMENTS: Criminal history dates back to the 1980's

cc:  INMATE
     INMATE CENTRAL FILE
     INMATE INSTITUTIONAL FILE