*4-94 HH*
*Dorm*
*Donaldson*

## ALABAMA BOARD OF PARDONS AND PAROLES
### REPORT OF INVESTIGATION

Type of Investigation __PRELIMINARY__ Date Dictated __04-21-97__

Name __MICHAEL DEWAYNE ANDERSON__ True Name __SAME__

Alias __MIKE ANDERSON, MIKE D. STRANGER, LORADO STRANGER, LOW RIDER__

RSA __B/M - 35__ DOB __03-30-62__ Height & Weight __5'6"; 150 LBS.__

Complexion __MEDIUM__ Color of Hair __BLACK__ Color of Eyes __BROWN__

Bodily Marks __SCAR ON CHEST__

Driver's License# __4987157AL (SUSPENDED)__ SS# __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__

AIS# __156,270 A__ FBI# __155101X10__ SID# __AL-00845827__

Address __224 EAST TURNER ROAD__ Phone# __(334) 452-2552__

__PRICHARD, ALABAMA 36610__

County __MOBILE__ Case# __CC96-1980__

Offense(s) __MURDER__

Sentence(s) __LIFE__

Date of Sentence __03-05-97__ Date Sentence Began __03-05-97__

Date of Arrest __08-20-96__ Date of Bond __NONE__ Bond Amt.$ __NONE__

Judge __DOUGLAS I. JOHNSTONE__ D.A. __JOHN M. TYSON, JR.__

Attorney __ARTHUR P. CLARK__ Retained____ Appointed __X__

Court Ordered Restitution $__2,212.65__

Barred from Parole(Ala. Code 15-22-27.1) Yes_____ No __X__

Copies sent to Central Records __4-30-97__
(data)

NOTES:

PBF 203

PRESENT OFFENSE(S)

County, Court & Case Number:

Mobile County, Circuit Court, Case Number CC96-1980.

Offense:

Murder

Sentence:

Life

Date of Sentence:

03-05-97

Details of Offense:

According to reports filed by the Mobile Police Department on 08-19-95 at approximately 3:53 p.m. officers responded to a report of shots fired at St. Stephens Road at St. Charles Avenue, Mobile, Alabama. Upon arrival, victim Walter Jasper Hawthorne, black male, date of birth 04-01-52 lying near the street. Mr. Hawthorne advised the Mobile Police officers that a male suspect known to him as "Mike" shot him. Mr. Hawthorne was transported to the University of South Alabama Medical Center where medical personnel advised that his wounds were life threatening. The police officers interviewed two (2) witnesses who were present at the time of the shooting who stated that he observed the subject known as Mike shoot Mr. Hawthorne and that Mike was accompanied by a younger black male between the ages of twelve (12) and fourteen (14) who he believed to be Mike's son. The witness stated that the shooting was the result of an argument between Hawthorne and Mike. Both witnesses described the subject as being in his early thirties approximately 5'4", muscular build with three (3) gold teeth. At approximately 8:45 p.m. on the same date the Mobile Police Department was notified by the USA Medical Center that Hawthorne had expired and was pronounced dead at 8:15 by Dr. R. Osborne.

At approximately 10:15 p.m. on the same date, a subject was stopped on Granger Street and Dauphin Island Parkway, Mobile, Alabama. The subject was driving a blue Ford pick-up truck with several television sets in the truck bed. The subject handed his driver's license over to police, dropped several bullets on the ground and fled. The subject was identified as Michael Anderson, Sr. Also with Anderson was his son, Michael Anderson, Jr., age thirteen (13) and William Wilson. Recovered from the truck was a Lorcin .380 caliber pistol. Michael Anderson, Jr. was transported to police headquarters where he gave a statement in which he admitted seeing his father shoot Hawthorne on St. Charles Street. Anderson, Jr. also stated the shooting stemmed from an argument. Anderson, Jr. stated that the gun recovered from the truck was the same one used in the shooting.

Serious Physical Injury Barring Parole:

**Subject's Statement:**

As the subject is currently in the state penitentiary, subject's statement is unavailable.

**Case Status of Co-Defendants:**

N/A

**Victim Notification Information:**

Beverly Hawthorne

**Victim Impact:**

Mr. Hawthorne lost his life in this incident.

**Location of Offense:**

City of Mobile, Alabama.

**Court Ordered Restitution:**

$2,212.65

## RECORD OF ARREST(S)

**Prior Arrest Record:**

| | | | |
|---|---|---|---|
| 07-02-80 | PD Mobile, AL | Assault 3rd | 07-02-80 Convicted 3 days to serve |
| 09-06-81 | PD Prichard, AL | No Driver's License | $50 fine and cost |
| 05-05-82 | PD Prichard, AL | Disorderly Conduct | Nolle Prossed |
| 05-13-82 | PD Prichard, AL | 1)No Driver's License | $50 fine and cost |
| | | 2)Reckless Driving | Dismissed |
| 09-07-81 | PD Prichard, AL | Robbery 3rd Degree | 10 yrs. impris. susp. 5 yrs. prob. Revoked: 11-16-89 |
| 10-30-82 | PD Prichard, AL | Disorderly Conduct | Dismissed |
| 01-18-83 | PD Prichard, AL | Assault 3rd Degree | Dismissed |
| 08-17-88 | PD Mobile, AL | Poss. of a Sawed Off Shotgun | Nolle Prossed |
| 09-15-89 | PD Mobile, AL | TOP 1st Degree (CC89-2988) | 03-28-90 Sent. 5 yrs. split 1 yr. to serve, probation 5 years |
| 09-15-89 | SO Mobile County | Assault 2nd Degree | No Billed |
| 01-12-95 | PD Prichard, AL | Running Red Light | 03-13-95 Convicted |

| 03-09-95 | SO Washington County | Speeding 75/55 MPH Zone | 05-08-95 Convicted |

**Subsequent Arrest Record:**

| 09-08-96 | SO Mobile County | DUI - Liquor | 01-22-97 Convicted |
| 09-08-96 | SO Mobile County | Driving While Suspended | 01-22-97 Convicted |

### PERSONAL/SOCIAL HISTORY

**Subject:**

Michael Dewayne Anderson was born on March 30, 1962 to JoAnn Anderson in Leroy, Alabama. Subject was raised by his aunt and uncle, George and Johnnie Mae Martin from a very early age.

**Marital Status/History:**

Anderson was married to Gwendolyn Anderson. One (1) child was born to this union Michael Dewayne Anderson, Jr. date of birth October 1981. Anderson has another son, Michael Dewayne Braggs, by Yolanda Braggs.

**Health:**

Anderson is in good health with no physical disabilities. He admits to the use of marijuana.

**Education:**

Anderson completed the twelfth grade at Continuous Learning Center after being expelled from Vigor High School for bringing a gun on campus.

**Financial Status:**

Information not available.

**Employment History:**

Anderson has worked for B E & k Construction as a laborer. Anderson's employment record shows majority of the time he was unemployed.

**Military Record:**

None

### OFFENDER'S FAMILY

**Father:**

Leroy Wilson information unknown.

**Mother:**

JoAnn Anderson information unknown.

**Guardian:**

Johnnie Mae Martin, resides at 224 East Turner Road, Prichard, Alabama.

**Siblings:**

Anderson states he has seven (7) brothers and sisters but was not raised with them since he was in the custody of his aunt and uncle.

EVALUATION OF OFFENDER

**Psychological Reports:**

None

**Reputation and Community Activities:**

Michael Anderson is known to local law enforcement.

**Probation and Parole Officer's Remarks:**

None

**Signed and dated at Mobile, Alabama this the 21st day of April, 1997.**

Anna S. Watson
Alabama Probation and Parole Officer

Reviewed: Fred H. Dees, Jr.
District Supervisor

ASW/krm



# State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 30150t
Montgomery, AL 36130

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER



June 27, 2005

ADMINISTRATIVE REGULATION                    OPR: OPERATIONS
NUMBER                    302

## INCIDENT REPORTING

**I.    GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for reporting incidents occurring within the jurisdiction of ADOC.

**II.    POLICY**

All incidents, which occur within the jurisdiction of ADOC, shall be reported in a timely manner according to the procedures set forth in this regulation.

**III.    DEFINITION(S) AND ACRONYM(S)**

A.    Class A Incidents:  Incidents which involve life-threatening matters and breaches of security that are likely to cause operational problems, imminent threat to the control and order of the institution and/or to the community that may require the assistance of an outside agency.

B.    Class B Incidents:  Incidents where injury to staff and/or inmates has occurred, which cause the disruption of the normal institution operation, or which pose a possible risk to the health or safety of the general public that typically do not require the assistance of outside agencies.

C.    Class C Incidents:  Incidents that pose no threat to the local community or to the safe and secure operation of the institution.

D.    CRO:  Central Records Office utilized for the maintenance of inmate active and inactive files.

E.    Designee:  A person authorized to perform duties assigned to another individual.

1 of 16

AR 302 – June 27, 2005

F.   **Disturbance**: Disruptive inmate behavior in which control of inmates is temporarily lost, and/or the peace of others is disturbed by violent, profane, indecent, offensive, or boisterous conduct or language.

G.   **Warden/Division Director**: An official of an ADOC institution/division.

H.   **Investigation & Intelligence Division**: The Investigative Division of ADOC referred to throughout this regulation as I&I.

I.   **Injury**: A wound requiring treatment by a medical professional but not requiring hospitalization.

J.   **Riot**: An institutional disturbance involving assemblage of several persons, by uproar and violent conduct, which creates grave danger of substantial damage to property or serious bodily injury to persons.

K.   **Routine Business Hours**: Monday through Friday between the hours of 8:00 am and 5:00 pm Central Standard Time, excluding state recognized holidays.

L.   **Sabotage**: A destructive or obstructive action intended to significantly impair orderly operations.

M.   **Serious Injury/Illness**: A wound or sickness resulting in prolonged unconsciousness, obvious disfigurement, protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty, or one which carries a substantial risk of death, and usually requires hospitalization.

N.   **Significant Incident**: Consequential; therefore, meriting serious consideration or extraordinary measures; likely to produce great harm or danger; or likely to attract immediate public interest.

O.   **Staff**: For the purpose of this regulation, an employee of the ADOC or a contracted employee.

P.   **Use of Force**: Any action directed toward another to apprehend, restrain, and/or protect inmates, employees, or other individuals, or to prevent the destruction of property and/or an escape.

Q.   **Weapons**: Handmade or commercially manufactured firearms, explosives, knives or stickers, or any device recovered in the use, attempted use, or concealment which has been taken and/or altered for the purpose of using it as a weapon.

IV.   **RESPONSIBILITIES**

A.   Wardens/Division Directors are responsible for developing their institutional/division Standard Operation Procedures (SOPs), as necessary, for the implementation of AR 302, Incident Reporting.

B.    It is the responsibility of all ADOC employees and contracted employees to abide by the procedures set forth in this regulation.

## V.    PROCEDURES

A.    Reporting Procedures

1.    All incidents assessed by the Warden/Division Director as being significant and requiring prompt notification should be reported to the Deputy Commissioner of Operations, or a designee, by telephone on a 24-hour basis, who will then determine if the Commissioner will be notified.

2.    When determined appropriate, the Warden/Division Director/designee shall notify the Public Information Officer by phone and fax a copy of ADOC Form 302-C, Duty Officer Report, to the Central Office with attention to the PIO.

3.    The Regional On-call I&I Investigator shall be notified by the Warden/Division Director or designee by telephone on a 24-hour basis for all Class A incidents. Wardens/Division Directors/designees shall assess all other incidents to determine the need for I&I involvement.

4.    An ADOC Form 302-C, Duty Officer Report, will be faxed or emailed to the Deputy Commissioner of Operations and to I&I as soon as possible following all Class A or Class B incidents.

5.    Class C incidents shall be reported by normal distribution of ADOC Form 302-A, Incident Report.

6.    After routine business hours, an ADOC Form 302-C, Duty Officer Report, will be faxed to the appropriate regional I & I Office for Class A and Class B incidents. (Refer to Annex B, I&I Regional Institution Listing):

a.    Central Alabama Institutions/Divisions notify Central I&I Office

b.    Southern Alabama Institutions/Divisions notify Atmore I&I Office

c.    North Central Area Institutions/Divisions notify St. Clair I&I Office

d.    Northern Area Institutions/Divisions notify Limestone I&I Office

B.    Documentation

1.    At the time an incident occurs, the reporting staff member shall ensure:

a.    An ADOC Form 302-A, Incident Report, is reviewed for accuracy, modified if necessary, and approved by a supervisor.

AR 302 – June 27, 2005

b.   A typed final ADOC Form 302-A containing the initial circumstances and available information of any incident requiring telephone notification to the Deputy Commissioner of Operations/designee shall be submitted within two business days of the incident to the Warden/Division Director/designee. The Warden/Division Director/designee will then have 24-hours to forward it to the Deputy Commissioner of Operations.

c.   If additional space is needed, an ADOC Form 302-B, Incident Report/Duty Officer Report Continuation, shall be utilized.

2.   Subsequent investigations, information, or statements that are gathered for follow-up to a previously submitted report shall utilize ADOC Form 302-B, Incident Report/Duty Officer Report Continuation.

3.   Each incident report will have an institutional number assigned to it and will be logged on the ADOC Form 302-D, Incident Report Log.

4.   All subsequent disciplinaries, behavior citations, continuation, or follow-ups, ADOC Form 302-Bs' are to be numbered accordingly. The number on the incident report will consist of the institution initials, year, and institution number as noted in Annex B (i.e. Institution Initial/Acronym - Year- Number, FCF-05-106).

5.   Any information collected including witness statements as a result of an institutional investigation will be attached to the original incident report.

6.   Distribution of the Incident Reports are as follows:

a.   Original and one copy to the Central I&I Division

b.   A copy to the Deputy Commissioner of Operations (Class A, B, or those incidents as stated in V.A.1 **ONLY**)

c.   A copy to the inmate's institutional file

d.   A copy to the Central Records Office for the inmate's departmental file

7.   Additional information about an incident, such as an assault, which later results in an individual's death, shall not be reported as a separate incident.

a.   The Warden/Division Director or designee shall note it as an amendment of the original report.

b.   The amendment may be made on ADOC Form 302-B with reference to the original incident report.

4 of 16

AR 302 – June 27, 2005

8. Incident reports involving the escape or death of an inmate shall be notarized.

9. Incident reports involving the serious injury, death, or escape of an inmate shall include in the narrative the following information:

    a. Name and any aliases, if appropriate

    b. AIS number

    c. Date of birth

    d. Race and sex

    e. Date of admission to ADOC

    f. County of commitment

    g. Offense(s)

    h. Sentence length

    i. Release eligibility date (minimum release date)

    j. Custody level

10. The return or apprehension of an escapee is not considered a separate incident, as the escape itself has been previously reported. Documentation shall be made on an ADOC Form 302-B as an amendment to the original incident report.

C. Each incident report concerning the discovery of a weapon(s) shall include specific information as to material(s) used to manufacture handmade weapon(s), where each was found, and circumstances of discovery (i.e., routine search and confiscation during/after an assault). If multiple weapons are found during one incident, they shall be documented as part of that one incident.

D. The descriptions and incident class codes listed in Annex A, Incidents by Class Code, are to be used as a guide to report incidents.

E. Instructions for completion of the Incident Report forms shall be provided by the Alabama Corrections Academy during basic training and by the Regional Training sites annually. Annex C, ADOC Form 302-A Instructions, provides general instructions for completion of the ADOC Form 302-A.

## VI. DISPOSITION

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

AR 302 – June 27, 2005

VII.   **FORMS**

      A.  ADOC Form 302-A, Incident Report

      B.  ADOC Form 302-B, Incident Report/Duty Officer Report Continuation

      C.  ADOC Form 302-C, Duty Officer Report

      D.  ADOC Form 302-D, Incident Report Log

VIII.  **SUPERCEDES**

This regulation supercedes Administrative Regulation 302, dated April 6, 1999, and any changes thereafter.

IX.   **PERFORMANCE**

Code of Alabama, 1975, Section 14-1-1

                                        Donal Campbell, Commissioner

ANNEX(S):

Annex A – Incidents by Class Code

Annex B – I&I Regional Institution List

Annex C – ADOC Form 302-A Instructions

AR 302 – June 27, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: | | 2. Date: | 3. Time: | 4. Incident Number: | Class Code: |
|---|---|---|---|---|---|
| 5. Location Where Incident Reported: | | | 6. Type of Incident: | | |
| 7. Time Incident Reported: | | | 8. Who Received Report: | | |

9. Victims:                    Name                         AIS

a. _____  No. _____

b. _____  No. _____

c. _____  No. _____

| 10. Suspects:      Name                AIS | 11. Witnesses:      Name                AIS |
|---|---|
| a. _____ No. _____ | a. _____ No. _____ |
| b. _____ No. _____ | b. _____ No. _____ |
| c. _____ No. _____ | c. _____ No. _____ |
| d. _____ No. _____ | d. _____ No. _____ |
| e. _____ No. _____ | e. _____ No. _____ |
| | f. _____ No. _____ |
| | g. _____ No. _____ |

**PHYSICAL EVIDENCE:**

12. Type of Evidence:

_____

_____

_____

_____

13. Description of Evidence:

_____

_____

_____

_____

14. Chain of Evidence:

a. _____

b. _____

c. _____

d. _____

e. _____

15. Narrative Summary:




Distribution:   ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner of Operations (Class A and B ONLY)
                COPY to Institutional File                                    COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

AR 302 – June 27, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

Institution:                                         Incident Number:                           Class Code:

Date:                                                              Type of Incident:

Narrative Summary (Continued) Page No.:

**ADOC Form 302-B – June 1, 2005**

AR 302 – June 27, 2005

# Alabama Department of Corrections
## Duty Officer Report

Class Code_____

Type of Incident: _____ Institution: _____

Victim(s): _____ AIS # _____ R/S _____ DOB _____

_____ AIS # _____ R/S _____ DOB _____

Suspect(s) _____ AIS # _____ R/S _____ DOB _____

_____ AIS # _____ R/S _____ DOB _____

_____ AIS # _____ R/S _____ DOB _____

Sentenced From: _____ Date of Sentence: _____

Offense(s) _____ Length of Sentence _____

Minimum Release Date: _____

Date: _____ Time: _____ Location: _____

Brief Narrative:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(Use ADOC Form 302-B for Continuation of narrative)

Official Reporting: _____ Date: _____ Time: _____

Receiver of Report: _____

Deputy Comm. of Operations: _____ Date: _____ Time: _____

Inst. Coordinator: _____ Date: _____ Time: _____

Investigations: _____ Date: _____ Time: _____

Public Information Officer: _____ Date: _____ Time: _____

ADOC Form 302-C – June 1, 2005

AR 302 – June 27, 2005

**ALABAMA DEPARTMENT OF CORRECTIONS**
**INCIDENT REPORT LOG**

| TYPE OF INCIDENT OR VIOLATION | RULE # | INMATE'S NAME | ARRESTING OFFICER | CITA | DISC | DATE RECEIVED BACK |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ADOC Form 302-D – June 1, 2005

AR 302 – June 27, 2005

10 of 16

# INCIDENTS BY CLASS CODE

## CLASS A CODES
Arrest-Felony/Violent Crime-Inmate
Arson-Injury-Property Damage/Operational Disruption
Assault-Inmate-Serious Injury
Assault-Staff-Serious Injury
Assault-Visitor-No Injury/Minor Injury/Serious Injury
Automobile Accident-Injury
Bomb Threat
Death-Inmate-Accident/Suicide/Homicide
Death-Staff-Natural/Accident/Suicide/Homicide (On Duty)
Death-Visitor-Natural/Accident/Suicide/Homicide
Drug Selling-Staff (On duty)
Drugs-Confiscated-Significant Amount-Staff/Inmate/Visitor
Epidemic-Public Health Threat
Escape or Attempted Escape (All)
Fire-Injury/Property Damage-Operational Shutdown
Hostage Situation (seizing or holding)
Injury-Accident-Visitor-Serious
Injury-Self Inflicted-Life Threatening
Institutional Lockdown-Total/Partial-Incident Related
Natural Disaster
Riot or Inciting
Sabotage-Operational Shutdown
Sexual Assault
Sexual Misconduct-Staff with Inmate
Strike-Inmate-Operational Shutdown
Strike-Staff-Operational Shutdown
Suicide-Attempt-Life Threatening
Use of Force-Lethal
Weapon-Commercial Firearm
Weapon-Discharged
Weapon-Explosives

## CLASS B CODES
Absconding
Arrest-Felony-Staff/Visitor
Arrest-Misdemeanor-Staff/Inmate/Visitor
Arson-Property Damage >$500
Assault-Inmate-Injury
Assault-Staff-Injury
Automobile Accident-No Injury
Burglary/Felony (Refer to Theft in Class C for other violations)
Conspiracy to Violate State Law
Counterfeiting
Death-Inmate-Natural

Annex A to AR 302 (page 1 of 4) – June 1, 2005

AR 302 – June 27, 2005

## INCIDENTS BY CLASS CODE

### CLASS B CODES (CONTINUED)

Destruction/Damage/Sabotage of State Property-Operational disruption
Disturbance-Temp or Threat of Loss of Control
Drug Screen-Positive (Staff)
Drug Screen-Refused (Staff)
Drug Selling-Inmate
Drugs-Confiscated-Staff/Inmate/Visitor
Drugs Found on Property (Substantial Amount)
Emergency Use of Inmate Crew by Outside Agency
Equip Problem-Major Disruption
Escape Device-Possession
Extortion or Blackmail
Fire-Property Damage >$500
Illness-Inmate-Serious-Hospital
Illness-Staff-Serious-Hospital (On Duty)
Illness-Visitor-Serious-Hospital
Injury-Accident-Inmate-Serious
Injury-Accident-Staff-Serious (On Duty)
Injury-Accident-Visitor
Injury-Self Inflicted
Intimidation-Threatening or Gathering around an ADOC Employee
Intoxicants-Use-Staff On Duty
Promoting Prison Contraband
Property Damage- >$500
Return from Escape
Robbery
Sexual Harassment
Sexual Misconduct-Staff
Solicitation of Staff-Security Threat
Strike-Inmate-Operational Disruption
Use of Force-Chemical Agents/ Electric Restraints/Impact Weapon/Physical
Vehicle Search for suspicion
Weapon-Device-Possession
Weapon-Ammunition
Weapon-Class A Tool
Weapon-Class B Tool
Weapon-Club
Weapon-Found-Not on State Property
Weapon-Handmade Knife
Weapon-Other
Weapon-Raw Materials

### CLASS C CODES

Attempt to Intimidate Employee
Assault-Inmate-No Injury
Assault-Staff-No Injury

Annex A to AR 302 (page 2 of 4) – June 1, 2005

AR 302 – June 27, 2005

# INCIDENTS BY CLASS CODE

## CLASS C CODES (CONTINUED)

Bribery or Attempted Bribery
Changing Sponsor, Residence, Employment without Permission
Charging, Accepting Compensation for Legal Assistance
Confiscation of US Currency from Inmate
Contraband (Possession or Discovery)
Corresponding with Another Inmate without Permission
Curfew Violation
Death-Inmate-Execution
Destruction of Personal Property
Destruction of State Property (Including Stealing, Disposing, Selling, or Altering)
Disorderly Conduct
Disrupting the Count
Dress Code Violation
Drug Paraphernalia
Drug Screen-Attempt to Alter
Drug Screen-Positive (Inmate)
Drug Screen-Refused (Inmate)
Drugs-Confiscated-Inmate
Equip Problem-Minor Disruption
Facility Maintenance Problem-Substantial/Unserviceable
Failure to Obey a Direct Order of ADOC Official or Contract Employee
Failure to Pay Court Ordered Fees
Failure to Report as Scheduled
Failure to Report to Work (Paid Employment/Community Service)
Failure to Seek Substance Abuse Treatment as Ordered by Supervisor
Falsifying/Altering/Forging Name of ADOC Official
Feigning Illness
Fighting w/Weapon
Fighting w/out a Weapon
Fired from Job-Inmate
Flooding the Walk/Cell
Forgery
Furlough/Pass Violation
Gambling/Gaming
Harassment
Horseplay
Indecent Exposure/Exhibitionism
Inhalants-Possession or Use of
Institutional Shakedown
Insubordination
Intentionally Creating a Security, Safety, or Health Hazard
Interference of Officer Duties (Also Delaying/Hindering)
Intoxicants-Possession
Intoxicants-Selling
Intoxicants-Use (Consumption, also Patronizing Est.)

Annex A to AR 302 (page 3 of 4) – June 1, 2005

AR 302 – June 27, 2005

# INCIDENTS BY CLASS CODE

## CLASS C CODES (CONTINUED)
Late Returning
Littering
Making a False Statement to an ADOC Employee or Lying
Malingering
Marrying Without Permission
News Media-Unexpected Contact
No ADOC ID Card on Person
No ADOC stenciling on Clothing-Inmate
Out of Place (Unauthorized Area)
Participate Security Threat Group Activity (gang)
Pending Investigation
Personal Property Violation
Possession of Security Threat Group (Gang) Materials
Property Damage- <$500
Receiving Two Food Trays
Refused Cell Assignment
Refuse to Adequately Participate-(Boot Camp)
Refuse to Participate
Refuse to Provide DNA Specimen
Refuse to Work/Failing to checkout for Work/Encouraging Work Stoppage
Sexual Misconduct-Inmate
Sexual Offense (non-forcible)/Soliciting
Smoking in a Prohibited Area
Solicitation of Staff-Other
Staff/Inmate Provocation
Strong Armed Activity/Robbery
Suicide-Attempt
Tampering w/Security Device/Equipment
Telephone Privileges Abuse (or Unauthorized Use of)
Theft (Box Break-in, Inmate, Staff, or State Property)
Threatening Employee
Threatening Inmate
Transfer-Death Row
Unauthorized Financial Obligation/Transaction
Unauthorized Location
Unauthorized Operation of a Vehicle
Unauthorized Possession of Property
Unauthorized Use of Institutional Resources
Unsatisfactory Work
Use of Canines, Non-Routine
Violation of ADOC Clothing Policy-Inmate
Violation of ADOC Regulations/Standard Operating Procedures (or Conspiracy, Aiding, & Abetting)
Visitor Problem/Denial

**Annex A to AR 302 (page 4 of 4) – June 1, 2005**

AR 302 – June 27, 2005

# I&I REGIONAL INSTITUTION LIST

**Central Alabama Institutions/Divisions notify Central I&I Office**
- Alabama Corrections Training Academy (ACA)
- Alex City Community Based Facility (ACWR)
- Bullock Community Based Facility (BCWC)
- Bullock Correctional Facility (BCF)
- Camden Community Based Facility (CCWC)
- Central Offices (CO)
- Draper Correctional Center (DCF)
- Easterling Correctional Facility (ECF)
- Elba Work Release (EWRC)
- Elmore Correctional Center (ELM)
- Frank Lee Youth Center (FLYC)
- Kilby Correctional Facility (KCF)
- Montgomery Community Work Center (MCWC)
- Red Eagle Honor Farm (REHF)
- Staton Correctional Facility (SCF)
- Tutwiler Prison for Women (TUT)
- Ventress Correctional Facility (VCF)

**Southern Alabama Institutions/Divisions notify Atmore I&I Office**
- Atmore Work Release (AWR)
- Fountain Correctional Center (FCF)
- Holman Correctional Facility (HCF)
- J. O. Davis Community Work Center (JOD)
- Loxley Community Based Facility (LWR)
- Mobile Community Based Facility (MCWC)

**North Central Area Institutions/Divisions notify St. Clair I&I Office**
- Bibb Correctional Facility (BIBB)
- Birmingham Community Based Facility (B'ham CWC)
- Childersburg Community Work Center (C-burg CWC)
- Donaldson Correctional Facility (WDCF)
- Farquhar State Cattle Ranch (SCR)
- Hamilton Aged and Infirmed (HAI)
- Hamilton Community Based Facility (HCWC)
- St. Clair Correctional Facility (SCCF)

**Northern Area Institutions/Divisions notify Limestone I&I Office**
- Decatur Community Based Facility (DCWC)
- Limestone Correctional Facility (LCF)

**Annex B to AR 302 – June 27, 2005**

AR 302 – June 27, 2005

# ADOC FORM 302-A INSTRUCTIONS

An ADOC Form 302-A will be filled out on all incidents that deviate from the normal operation of the institution/division. These reports are to be filled out in a clear, concise manner giving full details of the incident, as explained below:

**ITEM:**

1.  **Institution**: The name of the institution that is making the report.

2.  **Date**: The date on which the incident occurred.

3.  **Time**: The time the incident occurred.

4.  **Incident Report Number and Class Code**: Each incident is to be assigned a number, logged on ADOC Form 302-D, Incident Report Log, and inspected by a designated person who can determine if it is filled out properly before it leaves the institution. The number is to consist of the institution's initials (i.e. DCF, FCF, ECF), the current year, and the assigned consecutive incident number: example: FCF-05-106.

    **Class Code**: The appropriate incident class code – A, B, or C.

5.  **Location Where Incident Reported**: Exact location of incident (i.e. cellblock, bed).

6.  **Type of Incident**: The class code description (i.e. Assault, Escape) (from Annex A).

7.  **Time Incident Reported**: When the incident was reported to officials. Give date and hour if different from the day the incident occurred.

8.  **Who Received Report**: The official the incident was reported to.

9.  **Victims**: Correct Name and AIS number or job classification of individuals who were violated as a result of an incident.

10. **Suspects**: Correct name and AIS number or job classification of individuals committing the incident. (a reasonable effort should be made to determine who was the aggressor or suspect and who was the actual victim, especially in assault cases).

11. **Witnesses**: Individuals who saw the incident happen or can give pertinent information about the incident.

12. **Type of Evidence**: Physical matter confiscated as evidence (i.e. weapons, drugs). A full description of evidence should be provided. When describing a weapon, **FULLY DESCRIBE** the weapon, such as: made out of a wooden broom handle with the saw blade wrapped with duct tape.

13. **Description of Evidence**: Describe the evidence confiscated giving such information as size and color.

14. **Chain of Evidence**: The chain of this evidence must be maintained in the space provided by listing the name of each person to handle evidence in the order of possession (i.e. inmate to Officer, Officer to Supervisor, Supervisor to Warden). For successful prosecution, it is imperative that this chain be maintained in drug cases and assaults involving weapons. This evidence must be kept under lock and key until picked up by the State Investigator.

15. **Narrative Summary**: Give a short account of what occurred keeping in mind that in most cases, the state investigators, district attorneys, and courts must rely solely on the information you provide to them when making out these reports. If additional space is needed, use ADOC Form 302-B. It is important that the report provide all the basic information surrounding the incident and that the report be neat and legible. The Officer making the report must sign the completed report.

Annex C to AR 302 – June 1, 2005

AR 302 – June 27, 2005



# State of Alabama
# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**BOB RILEY**
GOVERNOR

**DONAL CAMPBELL**
COMMISSIONER

December 5, 2005

ADMINISTRATIVE REGULATION                    OPR:  CENTRAL RECORDS
NUMBER                    425

## RESTORATION OF "GOOD TIME"

I.  **GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR)
establishes responsibilities, policies, and procedures for criteria governing the restoration
of 'Good Time" lost as a result of disciplinary procedures.

II.  **POLICY**

It is the policy of the ADOC to utilize "Good Time" as a management tool and to provide
a process that may restore "Good Time" lost as a result of disciplinary proceedings.

III.  **DEFINITIONS**

A.  Clear Record: An inmate that has not received a disciplinary nor behavior citation
for a period of 60 days; an inmate has been in the custody of the ADOC at least
12 months after recapture from an escape.

B.  Correctional Incentive Time (CIT):  A reduction of sentence awarded to inmates
convicted of a charge committed on or after May 19, 1980.

C.  Good Time:  Commonly used term that refers to any of the incentive time
programs.

D.  Incentive Good Time (IGT):  An additional one-for-one reduction in sentence for
inmates serving Statutory Good Time who have exhibited exceptional behavior;
subject to the approval of the Commissioner/designee.  (Refer to AR 437, *Time
Computation and Procedures*.)

E.  Statutory Good Time (SGT):  An automatic reduction of sentence given to
inmates convicted of a charge which was committed prior to May 19, 1980.  Time

1 of 7

will be deducted from an inmate's sentence based on the table of good time deduction. (Refer to AR 437, *Time Computation and Procedures*.)

IV.    **RESPONSIBILITIES**

    A.    ADOC Commissioner/designee shall review "Good Time" restoration recommendations and render a decision regarding the restoration.

    B.    ADOC Deputy Commissioner for Operations shall provide oversight of the regulations and process involved in the "Good Time" program.

    C.    The Director of the Central Records Division shall ensure that the inmate database is updated with the approved "Good Time" restorations.

    D.    The Director of Information Systems will generate a quarterly report that lists inmates that are eligible to have "Good Time" restored. The report will be disseminated to all institutions.

    E.    Warden's are responsible for establishing their Standard Operation Procedure (SOP) for the implementation of AR 425, *Request for Restoration of Good Time* and ensures that inmates that meet the criteria are submitted for restoration of "Good Time" at the quarterly review.

V.    **PROCEDURES**

    A.    Criteria For Restoration Consideration:

        1.    The inmate has a two-month clear record.

        2.    Inmates must have proven by demonstrated behavior, attitude, and job performance, that they are deserving consideration for restoration.

        3.    An inmate must be in custody of the ADOC for a period of observation for at least twelve (12) months after recapture from an escape.

    B.    ADOC Institutions:

        1.    Classification Specialist shall review inmates' records for eligibility for the restoration of "Good Time":

            a.    Quarterly "Good Time" Restoration Report Review.

                1)    Review the report for prospective inmates.

                2)    Inmates that meet the criteria (paragraph V.A.) shall be submitted for restoration of "Good Time."

            3)      Report inmate information to Central Records if the inmate is a sex offender.

    b.     Special Review by direction.

    c.     Correctional Officers or support staff shall submit their recommendation on ADOC Form 425-A, *Supervisor/Correctional Officer Report,* with justification, to the shift commander.

    d.     The Shift Commander shall review and signature the recommendation. The Shift Commander shall submit the recommendation to institutional classification unit.

    e.     Inmate requests for consideration shall be considered at the quarterly review process.

2.     If an inmate meets the established criteria, Classification shall initiate the process for the restoration of "Good Time."

3.     An ADOC Form 425-B, *Request for Restoration of Good Time* shall be submitted to the Warden, specifying the amount of good time to be restored and justification.

4.     The Warden shall review the ADOC Form 425-B, and provide a recommendation to restore or deny, with justification, and forward to the Commissioner/designee.

5.     The Commissioner/designee shall review the ADOC Form 425-B and approve or disapprove the request, or finalize another course of action. The decision of the Commissioner/designee is final.

    a.     Disapproval of the restoration will be annotated on the ADOC Form 425-B and returned to the institutional classification unit. The original document will be placed in the institutional file and a copy given to the inmate.

    b.     Approval of good time restoration will be forwarded to the Director of Central Records, who will:

            1)      Ensure that the inmate database is updated.

            2)      Monitor the amount to be restored on sex offenders so that it does not violate the 45-day notification period prior to the release of sex offenders.

3) The original ADOC Form 425-B will be placed in the inmate central record file.

4) A new time sheet will be generated with copies to the central records file, institutional file, and the inmate.

B. County Jails and Other Facilities:

1. State inmates, who are housed in county jails, or in other facilities while awaiting transfer to ADOC institutions, may be recommended for restoration of lost good time by the county sheriff or the head of the facility where the inmate is housed.

2. Recommendation must be on letter head and contain justification supporting restoration. Separate letters are required for each inmate concerned.

3. Meet criteria for restoration consideration requirements as stated in paragraph V.A.

4. Recommendation for restoration of good time submitted under ADOC provisions of preceding paragraphs will be addressed to Director of Central Records, P.O. Box 301501, Montgomery, Alabama 36130, and will contain at a minimum:

   a. Inmate's name, AIS number and date of birth.

   b. Amount of good time recommended for restoration.

   c. Date of last disciplinary action against the inmate and the reason for the disciplinary action.

   d. Reasons for recommending restoration.

5. The Director of Central Records reviews and forwards the recommendation to the Commissioner/designee for consideration.

6. The Commissioner/designee will review recommendation for the restoration of Good Time and approve, disapprove the request, or finalize another course of action. The decision of the Commissioner/designee is final.

   a. Disapproval of the restoration will be annotated on the request; the original document will be placed in the Central Records File, and a copy returned to the originator of the request.

    b.    Approval of good time restoration will be forwarded to the Director of Central Records who will:

        1)    Ensure that the inmate database is updated.

        2)    Monitor the amount to be restored on sex offenders to not violate the 45-day notification period prior to the release of sex offenders.

        3)    The original request will be placed in the inmate central record file.

        4)    A new time sheet will be generated with copies to the central records file, originating entity, and the inmate.

## VI.   DISPOSITION

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.   FORMS

A.    ADOC Form 425-A, *Supervisor/Correctional Officer Report.*

B.    ADOC Form 425-B, *Request for Restoration of Good Time.*

## VIII.   SUPERCEDES

This regulation supercedes Administrative Regulation 425, dated November 2, 1995, and all changes as amended.

## IX.   PERFORMANCE

A.  Section 14, Code of Alabama, 1975.

B.  ADOC Inmate Handbook.

C.  AR 403, *Disciplinary Hearing Procedures for Major Rule Violations.*

Donal Campbell, Commissioner

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

**Supervisor/Correctional Officer Report**

| | | |
|---|---|---|
| 1. Institution: | | 2. Date: |

| | |
|---|---|
| 3. Inmate Name: | 4. AIS#: |

| | | |
|---|---|---|
| 5. Job: | 6. Race: | 7. Sex: |

8. Reason for Report:

| 9. Number of hours supervised per day: | 10. Supervision is:    ? Direct    ? In-direct |
|---|---|

11. Evaluation Areas: Provide a brief response to each of the following.  If you do not know about a particular area please say so.  Do not answer good or bad without giving the specific reason (s) behind your answer.

A.  Adjustment to Incarceration:        ? Poor    ? Fair    ? Good    ? Excellent

Comments:

B.  Work Performance:        ? Malingerer    ? Gets By    ? Performs Well    ? Unusually Good Worker

Comments:

C.  General Attitude:        ? Poor    ? Fair    ? Good    ? Excellent

Comments:

D.  Relationship with Other Inmates:        ? Poor    ? Fair    ? Good    ? Excellent

Comments:

E.  Relationship with Correctional Staff:        ? Poor    ? Fair    ? Good    ? Excellent

Comments:

F.  Utilization of Spare Time:        ? Poor    ? Fair    ? Good    ? Constructive

Comments:

G.  Personal Appearance:        ? Unkempt    ? Average    ? Always Well Groomed

Comments:

H.  Maintenance of Living Area:        ? Messy    ? Average    ? Neat and Tidy

Comments:

12.  Certification:  I am aware that this report can be used in consideration of less restrictive placement, change of custody, or restoration of *Good Time.*

| Name of Supervisor/Correctional Officer | Signature | Position/Title | Shift |
|---|---|---|---|

13. Shift Commander Review:

| Shift Commander Name | Signature | Date | Shift |
|---|---|---|---|

ADOC Form 425-A December 5, 2005

## STATE OF ALABAMA
## DEPARTMENT OF CORRECTIONS

### Request for Restoration of Good Time

| 1. Date: | 2. | The following inmate is submitted for restoration of lost good time in accordance with AR 425, *Restoration of Good Time.* | |
|---|---|---|---|
| 3. Inmate Name: | | 4. AIS #: | 5. Institution: |
| 6. Current Job: | | | |
| 7. Date of Last Disciplinary: | | 8. Rule/Infraction: | |

9. Dates and Rule/Infraction for other Disciplinaries:

_____

_____

_____

11. Escape – Date of Return to ADOC Custody (Must be at least 12 months Ago):

12: Recommended amount of time to be restored:

13. Classification Specialist's Justification for Recommendation:

_____

_____

_____

_____

_____

**[ ] RECOMMEND   [ ] DO NOT RECOMMEND**

| 14. Signature of Classification Specialist: | 15. Date of Signature: |
|---|---|

16. Warden's Justification for Recommendation:

_____

_____

_____

_____

**[ ] RECOMMEND   [ ] DO NOT RECOMMEND**

| 16. Signature of Warden: | 17. Date of Signature: |
|---|---|

18.   **[ ] APPROVE   [ ] DISAPPROVE** _____

_____

| 19. Signature of Commissioner/ Designee: | 20. Date of Signature: |
|---|---|

Distribution if approved: Original-Central Records, Copies-Institutional File and Inmate
Distribution if disapproved: Original-Institutional File, Copy-Inmate

ADOC Form 425-B -- December 5, 2005



STATE OF ALABAMA

DEPARTMENT OF CORRECTIONS

**DON SIEGELMAN**
**GOVERNOR**

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

MICHAEL W. HALEY
COMMISSIONER

February 1, 1999

**ADMINISTRATIVE REGULATION**
**NUMBER                432**

**OPR:  WORK RELEASE**

## SUPERVISED INTENSIVE RESTITUTION PROGRAM

I.    **GENERAL**

   A.   This regulation establishes criteria and procedures for entrance into the Supervised Intensive Restitution (SIR) Program.  Authority for extending confinement and restitution under this program is provided by **Act 83-838, November 28, 1983**.

   B.   The Supervised Intensive Restitution Program (herein called the SIR Program) will provide for the supervision of inmates by Department of Corrections officers. Case loads for all counties will be up to sixty (60) inmates.

   C.   The courts of the State of Alabama may order restitution to victims of crimes in accordance with Article 4a, Restitution to Victims of Crimes, Sections 15-18-68, 15-18-69, 15-18-71, and 15-18-74, CODE OF ALABAMA, 1975.  Substance of sections pertaining to this regulation are as follows:

      1.   **Criteria for Determining Restitution.**  In determining the manner, method, or amount of restitution to be ordered, the court may take into consideration the following:

         a.   The financial resources of the defendant and the victim and the burden that the manner or method of restitution will impose upon the victim or the defendant.

         b.   The ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court.

         c.   The anticipated rehabilitative effect on the defendant regarding the manner of restitution or the method of payment.

         d.   Any burden or hardship upon the victim as a direct or indirect result of the defendant's criminal acts.

    e.    The mental, physical, and financial well-being of the victim.

2.    **Objections to Order; Statement of Findings**.   At such restitution hearings, the defendant, the victim, the district attorney, or other intended party, may object to the imposition, amount, or distribution of restitution all such objections to be heard and preserved as a matter of record. The court shall thereafter enter its order upon the record, stating its findings and the underlying facts and circumstances thereof.

3.    **Enforceability of Order when Defendant Imprisoned; Conditions of Parole**.  When a defendant is sentenced to a term of imprisonment, the order of restitution shall be enforceable during the period of imprisonment when the defendant has income.  The Board of Pardons and Paroles will be notified of the amount of restitution by its Parole Officer and when and if the defendant is paroled, it shall be made a condition of parole to continue his restitution payments to the victim.  If, during the period of the defendant's parole, he/she fails to make restitution as ordered by the original court, it shall be grounds for revocation of parole.

4.    **Supervision of Parolee's Restitution**.  Whenever an offender in the custody of the Department of Corrections is paroled, the Board of Pardons and Paroles will inform him/her of the court's imposition of restitution payments and the supervising parole officer will see that the schedule of payment of restitution is resumed and continued until paid in full.

D.    Where restitution to the victim has not been ordered by a court of this state as part of the inmate's sentence, the Commissioner may, in accordance with Act 83-838, require that restitution be paid to the victim through the Circuit Clerk of the county where the crime was committed.

## II.    SELECTION PROCESS

A.    Selection of inmates for the SIR program will be made in accordance with procedures and criteria outlined in the ADOC Classification manual and revisions thereto. Split Sentence inmates are not eligible for the SIR Program. (See attached Alabama Attorney General Letter/Opinion)

B.    These criteria constitute broad guidelines for assignment to a custody level and placement within which classification personnel are expected to use professional judgement and experience for making recommendations and approvals.

C.    Where protests of placement are received from district attorneys, judges, and/or victims or their families, the case will be referred to the Central Review Board for recommendations and the Director of Classification for final decision.

## III.    PRE-PLACEMENT PROCEDURES

A.    Central Record Screen.  Before an inmate can be placed on the SIR Program, the sentencing judge and district attorney shall be given ten (10) days written notice.

AR432-February 1, 1999

B.    Institutional Screen.

    1.    Institutions will be notified two (2) weeks prior to an inmate's expected placement in the SIR Program to:

        a.    Determine voluntary participation/assessment of attitude for community service non-pay jobs.

        b.    Determine inmate's ability to work and provide information on inmate's institutional work record.

    2.    Psychological screen will be completed on new inmates.

    3.    Physicals will be accomplished.

    4.    Inmates who are determined not to meet the criteria for SIR will be reported to Central Classification (Attn: SIR) as soon as possible after the determination is made utilizing the appropriate form (Form 10).

    5.    Requests for review of inmates for the SIR Program from institutional classification personnel will be forwarded to SIR Classification a minimum of four (4) weeks prior to anticipated placement of the inmate on the program, on a SIR Form 9, (Annex A) attention: Central Classification (Attn: SIR).

C.    Field Screen

    1.    SIR Officer will also be notified at least two (2) weeks prior to the inmate's expected transfer to SIR.

    2.    Inquiry will be made to county officials (Sheriff and probation officer) to determine the status of the inmate as to pending probation revocation hearings, detainment, protests, etc.

    3.    Sponsor and residence will be visited to determine suitability. At this time, the sponsor will be given orientation on the program, and the Inmate Sponsor Agreement (SIR Form 6, Annex B) will be signed by both the sponsor and Supervising Officer.

    4.    The SIR Inmate/Sponsor Field Screen (SIR Form 2) will be completed by the Supervising Officer on each inmate, and submitted to SIR Classification. Inmates will not be placed on SIR without a completed field screen being sent to the central file. (This includes all Work release Center recommendations)

## IV.    ASSIGNMENT AND ORIENTATION OF INMATES

A.    Each inmate, upon initial assignment to the program, will be thoroughly briefed on rules and regulations of the SIR Program by the Supervising Officer. Failure to comply with these rules is grounds for immediate termination from the program.

AR432-February 1, 1999

B.   Medical Emergency/Indigent SIR Inmates:  During the initial interview, the supervisor will determine the willingness and ability of the sponsor and/or inmate to handle reasonable medical expenses.

    1.   If the Supervising Officer learns of an injury or illness determined to be an emergency, his/her first responsibility will be to see that the injured SIR inmate receives medical care at the nearest facility or doctor's office.  If hospitalization is necessary, the Supervising Officer will transfer the inmate at the earliest possible time via Form 258 (with the approval of the attending physician) to the closest Department of Corrections Institution that has a hospital.  If it is not physically possible to transfer the inmate due to the injury/illness, then a paperwork (Form 258) transfer will be initiated **immediately** upon becoming aware of the situation.  Telephonic notification will be made to the DOC medical provider.

    2.   If determination is made that financial assistance is required by the inmate, and treatment can be provided locally, the Supervising Officer will notify the Departmental Fiscal Manager, Accounting Division, 1400 Lloyd Street, Montgomery, AL 36130, (334-240-9508) and apprise him/her of the circumstances and request approval for payment to the physician or facility providing the emergency care.  All statements or bills are to be mailed for payment once the Departmental Fiscal Manager has approved the care.

    3.   In **all instances** where the Department of Corrections makes payment for outside medical care, the receiving inmate **will be expected** to reimburse the Department of Corrections when he/she is gainfully employed on a basis commensurate with his/her income.  The amount and schedule of reimbursement will be worked out between the Supervising Officer and the SIR inmate.  An inmate's payment will be made by money order, payable to the Department of Corrections.  The Supervising Officer will mail these money orders to the Accounting Division, accompanied by a note stating the inmate's name, AIS number, County SIR Program, and "Reimbursement/Medical Expenses". An information copy of these payments will be forwarded to the Director of ECS.  Any questions regarding reimbursement should be directed to Accounts Receivable at (334) 240-9508.

    4.   Medical problems of a **non-emergency** nature will be paid for by the inmate, as the initial agreement calls for, except in instances where prolonged hospitalization or treatment cannot be handled by the inmate or sponsor.  Under these circumstances, the Supervising Officer will contact the CMS staff and arrange for transportation of the inmate back to the Department of Corrections' medical facility.

## V.   SIR SUPERVISION

A.   SIR Supervisors will be based at their assigned work release centers and will operate the SIR Program from there.  The Work Release Warden and SIR Supervisor will be granted broad supervisory discretion of the SIR inmate under their control. Initial sponsor and home checks will be made in the field. The following schedule lists minimum levels of supervision and may be increased at the discretion of the supervising Warden.  Those inmates suspected of rule violations will be supervised at increased levels.

AR432-February 1, 1999

B.  Inmate checks will be in accordance with the following schedule:

1.  **Face – to - Face Contact**: The Inmate will report to the work release center weekly.

2.  **Employment Verification**:  Telephonic contact with employer twice per month. Inmate will show pay stub during the face – to – face weekly visit.

3.  **Curfew:** 9:00 P. M. to 6:00 A. M. for four months, then at the supervisor's discretion, 11:00 P. M. to 6: A. M.  Supervisor, with the consent of the Warden, will control the curfew times.  Telephonic checks are to be made weekly.

4.  **Home Visits**:  Visits will be made quarterly.

5.  **Community Service**:  To complete a forty hour work week or at any time when directed by the Warden.

6.  **Local Records Check**:  Make weekly checks for arrests of inmates.

7.  **Law Enforcement Notification**:  SIR inmates will be entered in the statewide computer.

8.  **Monthly List to Local Law Enforcement**:  SIR Supervisors will provide (via mail) a listing of all SIR/PDL inmates assigned to their local areas of jurisdiction.

## VI.  RESTITUTION/SUPERVISION PAYMENTS

A.  Where restitution to the victim has not been ordered by a court of this state as part of the inmate's sentence, the Commissioner may, in accordance with **Section 15-18-115**, **CODE OF ALABAMA, 1975**, require that restitution be paid to the victim through the circuit clerk of the county where the crime was committed.  Restitution will be paid to the appropriate clerk of the court.  Supervisors will check monthly with the clerk of the court to ensure that payments are properly made.

B.  Inmates of the SIR Program will reimburse the Department of Corrections a minimum of twenty dollars ($20) per week, with an approved money order or cashiers check.

C.  Inmates will reimburse the Department of Corrections a minimum of twenty-five dollars ($25, this price may change) for any positive drug screen performed on them.

## VII.  VIOLATIONS

A.  An inmate who violates the provisions of this regulation may be transferred out of the program.  Inmates assigned to the program will be subject to all rules and regulations of the **Inmate Handbook** and all provisions and specific rules of the SIR Program. An inmate who receives a disciplinary may be removed from the program and be subject to action as provided by **Administrative Regulation 403 and/or Administrative Regulation 414**.  If selected, eligible inmates may be placed in the Work Release Relapse Training Program following disciplinary action.

5

AR432-February 1, 1999

B.    Disciplinaries will be accomplished by the arresting officer.  Approval and review will be accomplished by the supervising Warden.

## VIII.    INCIDENT REPORTS

A.    Supervision Officers will be responsible for preparation of incident reports on all incidents, **including escape.**    Escape reporting procedures remain the same as required by **Administrative Regulation 409**.

B.    All incident reports (DOC Form 601) will be forwarded to the supervising Warden to have a control number added.    Distribution of DOC Form 601 will be in accordance with **Administrative Regulation 302**.

## IX.    MONTHLY REPORT

Each County Supervised Intensive Restitution (SIR) Program will submit the yellow copy of the SIR Monthly Statistical Report (SIR Form 1) to the Director of RME, 101 So. Union Street, Montgomery, AL., 36130-1501, no later than the fifth day of the month.  Where there is more than one county under one SIR Program, a separate form will be provided for each county served.

## X.    RELEASE PROCESSING

Each county SIR Officer will be responsible for processing inmates at their end-of-sentence (EOS) or parole.  Inmates may sign a waiver of discharge fee or report to their assigned work release center to collect this fee.

## XI.    SUPERSESSION

This regulation supercedes Administrative Regulation 432, dated December 18, 1996, as amended

Michael W. Haley, Commissioner

## SUMMARY OF CHANGES

This revision deletes the supervision teams and increases inmate costs for positive drug screening. A new SIR Form 9 is added and an Attorney General opinion has been included with the regulation.

### Annexes

| | |
|---|---|
| Annex A | Classification Data Sheet (ADOC SIR Form 09, Rev 1-97) |
| Annex B | Inmate Sponsor Agreement (ADOC SIR Form 6) |
| Annex C | ADOC SIR Contract |
| Annex D | Alabama Attorney General Letter/Opinion (May 20, 1996) |

6

SIR-09 (Rev. 01/97)        CIRCLE ONE    PDL APPLICATION  /  SIR APPLICATION
## CLASSIFICATION DATA SHEET

Date _____

| | |
|---|---|
| NAME _____ | CO _____ |
| R/S _____ | OFFENSE _____ |
| AIS # _____ | SENTENCE _____ |
| DOE _____ | ECS/PD _____ |
| SSN _____ | Case # (s) _____ |
| INST _____ | AKA _____ |

SENTENCING DATA
DISTRICT ATTORNEY(s)                          JUDGE(s)

| _____ COUNTY _____ | _____ COUNTY _____ |
| _____ COUNTY _____ | _____ COUNTY _____ |
| _____ COUNTY _____ | _____ COUNTY _____ |
| _____ COUNTY _____ | _____ COUNTY _____ |

RESTITUTION ORDERED
| | |
|---|---|
| Court Costs _____ | Restitution _____ |
| Attorney Fees _____ | Fines _____ |

### TO BE COMPLETED BY INSTITUTION

Custody _____ Date Current Custody _____ Job Assignment _____

SPONSOR INFORMATION
| | |
|---|---|
| Name _____ | Relation to Inmate _____ |
| Address _____ | Telephone ( ) _____ |

_____    SIGNATURE OF RECOMMENDING OFFICIAL        DATE

BOARD COMMENTS/SPECIAL CONDITIONS OF PROGRAM PLACEMENT   (CRB ONLY)
BD1 _____ Approved _____ Denied _____ Divert To _____
Comments _____
_____

BD2 _____ Approved _____ Denied _____ Divert To _____
Comments _____
_____

BD3 _____ Approved _____ Denied _____ Divert To _____
Comments _____
_____
_____

### TO BE COMPLETED BY CENTRAL REVIEW BOARD   (PDL ONLY)
APPROVED FOR_____DAYS/HOURS _____ DENIED _____DATE
    I CERTIFY THAT THE ABOVE NAMED INMATE FULFILS CRITERIA ESTABLISHED BY ALABAMA LAW AND
    DEPARTMENTAL POLICY

FINAL ACTION    (SIR PROGRAM)                    APPROVED _____ DENIED
Served 90 Days: _____    Placed on SIR Program _____
Denial Code: _____    Divert To: _____
_____

### SPONSOR'S STATEMENT
    I, _____ after receiving a briefing of my obligations legal and
        Name        Relationship
    otherwise, willingly accept such responsibility in sponsoring the above named inmate while on this leave/pass.

_____    _____    _____
    WITNESS            SPONSOR SIGNATURE        DATE

ADOC SIR Form 9 (multi-part - Revised 1/97)

Annex A
7

AR432-February 1, 1999

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
SUPERVISED INTENSIVE RESTITUTION PROGRAM

INMATE SPONSOR AGREEMENT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, _____

_____ Name/Address _____

_____, agree          to

sponsor _____, while he/she is

Name/AIS Number

assigned to the _____County SIR Program.

I agree to assist the Department of Corrections' Supervision Officer in providing supervision of the above named inmate while I am his/her sponsor.

I understand that if I do not cooperate fully with the Supervision Officer, my sponsorship may be terminated, and the above named inmate could be removed from the SIR Program.

I agree to assist the above named inmate in paying the twenty dollars ($20) weekly supervision fee until such time as he/she obtains employment.

After having received a briefing on my obligation, legal and otherwise, I willingly accept such responsibilities in sponsoring the above named inmate while he/she is assigned to the SIR Program.

I understand that the inmate is responsible for his/her own medical and dental expenses, I will immediately notify the SIR supervisor if the inmate is taken to a hospital/clinic for medical or dental care.

_____          _____
Date                                        Signature/Sponsor


_____
Signature/Witness


**ADOC SIR Form 6**

Annex B

8

AR432-February 1, 1999

ALABAMA DEPARTMENT OF CORRECTIONS
SUPERVISED INTENSIVE RESTITUTION CONTRACT

I, _____, an inmate of the Alabama Department of Corrections, recognize the privileges of working while continuing to serve my sentence, agree to abide by the terms and conditions set forth in this agreement.

I understand and agree that my hours of work will be regulated according to the job requirement of my employer, and that my employment must be in accordance with the prevailing working conditions and wages in the area. SIR Supervisor must approve employment.

I agree to report any deviation of these conditions to the SIR Supervisor immediately upon having knowledge of such conditions.

I understand and agree that when I am not employed, I will work forty hours per week on community/public projects. I understand if I am employed less than forty hours per week, the remainder of the 40 hours will be performed on community/public projects as assigned by the SIR Supervisor.

I understand and agree that I will pay the Department of Corrections a minimum of $20.00 per week, to help pay supervision cost. (This cost may change).

I understand and agree that I will be responsible for my own medical and dental expenses.

I further understand and agree that I will pay all restitution, court costs, and court appointed attorney fees which the Clerk of the sentencing court reports being owed by me. These payments are to be made monthly directly to the appropriate Clerk of the Court. The SIR Supervisor will check monthly to make sure the payments are properly made.

## RULES AND REGULATIONS

1.    I agree to report to work if employed, and should my employer require my services for overtime, I will report it to the supervisor.

2.    I agree not to make any purchases or enter into contracts not specifically authorized in writing by my SIR Supervisor.

3.    I agree not to purchase, have in my possession, nor consume alcoholic beverages or synthetic narcotics and drugs in any form, nor enter upon the premises of a drinking establishment, (bar or tavern), nor enter a residence where this activity is ongoing.

4.    I agree to conduct myself s a good citizen and comply with all Municipal, State and Federal Ordinances and Laws.

5.    I agree to avoid association with any person of questionable reputation, this includes ex-felons, except for work.

**ADOC SIR Contract (revised February 1999)**
Annex C (Page 1 of 2)

9

AR432-February 1, 1999

6.   I agree not to allow any visitors, relatives, or friends to visit with me during my working hours.

7.   I agree to assume the expense of my transportation to and from work, if employed.

8.   **I understand I am not to leave the State of Alabama for any reason, at any time**.

9.   I will submit to alcohol and urine tests whenever required by my SIR Supervisor. I agree to pay $25.00 for any positive test to cover the cost thereof. (This cost may change).

10.  I understand that my willful failure to return to my place of residence as specified will be considered an escape from confinement and is punishable as prescribed by law.

11.  I will abide by the curfew rules established by my SIR Supervisor.

12.  I will not marry without written permission of the Department of Corrections.

13.  I will maintain the grooming standards established for inmates of the Alabama Department of Corrections.

I understand that if I should violate any of these conditions established herein, I may be removed from the privileges of the Supervised Intensive Restitution (SIR) Program.

I certify that I have read (or had read to me) this agreement in its entirety, and that I fully understand and will abide by these conditions.


Signed this _____ day of _____, 19 _____.

_____          _____
Inmate's Signature/AIS #                         Official Witness

_____          _____
Inmate's Home Address                            Title

_____
Inmate's Home Telephone Number


**ADOC SIR Contract (revised February 1999)**

Annex C (Page 2 of 2)

AR432-February 1, 1999

# OFFICE OF THE ATTORNEY GENERAL



**JEFF SESSIONS**
ATTORNEY GENERAL
STATE OF ALABAMA

ALABAMA STATE HOUSE
1 SOUTH UNION STREET
MONTGOMERY, ALABAMA 36130
AREA (334) 242-7300

May 20, 1996

Hon. Andrew W. Redd
General Counsel
State of Alabama,
Department of Corrections
Montgomery, Alabama  36130

RE:  Request for Clarification

Dear Mr. Redd:

Your request of May 10, 1996, for clarification of
Attorney General's Opinion 96-00168 dated April 1, 1996, has
been given to me for reply. Under the example you provided,
a defendant serving the confinement portion of a split
sentence who after beginning the split receives a concurrent
non-split sentence, that defendant is not eligible for the
SIR program until the confinement portion of the split
sentence is served in its entirety. Until the confinement
portion of the split is over, the provisions of Code of
Alabama 1975 §15-18-8 and the sentencing judge's order
prevent the Department of Corrections from placing that
defendant in the SIR program.

In your letter, you refer to work-release and
pre-release discretionary leave (PDL) but the
above-referenced opinion was limited to whether an inmate
serving a split sentence could be placed in the SIR
program. Therefore, that opinion has no bearing on PDL or
work-release eligibility. It does seem clear, however, that
a sentencing order imposing confinement for a definite
period pursuant to §15-18-8 would be violated by any form
of early release such as PDL where the defendant is no
longer "confined in a prison, jail-type institution or
treatment institution."

Annex D (Page 1 of 4)

11

AR432-February 1, 1999

# OFFICE OF THE ATTORNEY GENERAL



**JEFF SESSIONS**
ATTORNEY GENERAL
STATE OF ALABAMA

APR 1 1996

ALABAMA STATE HOUSE
11 SOUTH UNION STREET
MONTGOMERY, ALABAMA 36130
AREA (334) 242-7300

Honorable Dale Segrest
Circuit Judge
Tallapoosa County Courthouse
125 N. Broadnax
Dadeville, AL 36853

Prisons and Prisoners –
Supervised Intensive
Restitution – Sentences –
Department of Corrections

A defendant sentenced to
the Department of
Corrections for
confinement as part of a
split sentence cannot be
placed on the Supervised
Intensive Restitution
Program, §§ 15-18-110,
et seq.

Dear Judge Segrest:

This opinion is issued in response to your request
for an opinion from the Attorney General.

**QUESTION**

When a judge sentences a defendant to a
period of confinement in the Department of
Corrections as part of a split sentence
pursuant to § 15-18-8 of the Code of
Alabama 1975, can the Department of
Corrections place that defendant in the
Supervised Intensive Restitution Program,
§§ 15-18-110, et seq.?

Annex D (Page 2 of 4)

12

Honorable Dale Segrest
Page 2

### FACTS, LAW AND ANALYSIS

Section 15-18-8 of the Code of Alabama 1975 provides, in pertinent part, as follows:

"(a)  When a defendant is convicted of an offense and receives a sentence of 15 years or less in any court having jurisdiction to try offenses against the State of Alabama and the judge presiding over the case is satisfied that the ends of justice and the best interests of the public as well as the defendant will be served thereby, he may order:

"(1)  That the convicted defendant be confined in a prison, jail-type institution or treatment institution for a period not exceeding three years and that the execution of the remainder of the sentence be suspended and the defendant be placed on probation for such period and upon such terms as the court deems best . . . ." (Emphasis added.)

Section 15-18-112 provides as follows:

"In order to provide for the individual supervision and placement of an inmate in the community to obtain employment and establish a residence in order to aid in the reintegration of the inmate into society, the department is authorized to adopt rules, regulations and policies permitting the commissioner to extend the limits of confinement of an inmate where there is reasonable cause to believe the inmate will honor the trust placed in such inmate by authorizing such inmate, under prescribed conditions, to leave a State correctional institution and reside in the community under the

Annex D (Page 3 of 4)

13

Honorable Dale Segrest
Page 3

Intensive supervision of a
correctional officer in the
community." (Emphasis added.)

Under § 15-18-8, a defendant sentenced to a split
sentence must be "confined in a prison, jail-type
institution or treatment institution." An inmate placed
in the SIR Program must "leave a state correctional
institution and reside in the community" and therefore is
not "confined" as § 15-18-8(a)(1) requires.

CONCLUSION

The Department of Corrections is not authorized to
place a defendant sentenced to confinement as part of a
split sentence pursuant to § 15-18-8 in the SIR Program.

I hope this sufficiently answers your question. If
our office can be of further assistance, please contact
John Gibbs of my staff.

Sincerely,

JEFF SESSIONS
Attorney General
By:

JAMES R. SOLOMON, JR.
Chief, Opinions Division

JS/JG/dv
S3.96/OP

Annex D (Page 4 of 4)

14




# State of Alabama
# Alabama Department of Correction

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**BOB RILEY**
GOVERNOR

**DONAL CAMPBELL**
COMMISSIONER

January 5, 2006

ADMINISTRATIVE REGULATION                    OPR:  TREATMENT
NUMBER                    440

## INMATE DRUG SCREENING

## I.    GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes the responsibilities, policies, and procedures for verifying inmate compliance to a drug free environment. Drug testing has been instituted for ADOC supervised inmates as a management tool for staff and as a deterrent to drug use, drug trafficking, and drug related infractions.

## II.    POLICY

It is the policy of the ADOC to conduct drug and alcohol testing of inmates to detect and deter the abuse of contraband and illicit substances.  This policy provides for non-discrimination, including, but not limited to, race, religion, and gender.  ADOC is committed to drug testing, sanctions, and treatment of all inmates to the extent possible to maintain a zero tolerance for such behavior.

## III.    DEFINITION(S) AND ACRONYM(S)

A.    Verified positive.  A positive urinalysis test conducted by an ADOC on-site laboratory.

B.    Confirmed positive.  A positive urinalysis test conducted by an independent off-site laboratory.

## IV.    RESPONSIBILITIES

A.    The ADOC Director of Treatment will:

1.    Ensure that this AR is in compliance with applicable state and industry standards.

2.    Procure and distribute drug testing equipment and supplies.

3.    Develop and implement a curriculum of appropriate training.

4.    The Officer-In-Charge of conducting drug testing will ensure that all tests are completed according to standards of the *College of American Pathologists* and that proper chain of custody is maintained to ensure the integrity of the testing program. Officers will receive training on applicable equipment associated with the substance abuse testing program.

## V.   PROCEDURES

A.    Testing for Drugs and Alcohol

1.    Testing equipment is capable of screening for the following: Alcohol, Amphetamines, Methamphetamines, MDMA (Ecstasy), Oxycodone, Tricyclic Antidepressants (TCA), Barbiturates, Benzodiazepines, Methadone, Cannabinoids (marijuana), Cocaine, Opiates, and Phencyclidine (PCP).

2.    The majority of testing should be for frequently abused drugs, such as cocaine, marijuana and alcohol. Spot screening is to be done for all drugs.

3.    Each institution will test for drugs most frequently used in the area.

4.    The inmate's institutional and medical records may be reviewed to determine type of drug(s) used prior to incarceration.

B.    Inmate Testing Criteria. The following criteria will be used for the selection of inmates tested for substance abuse:

1.    Inmates will be tested on a random, unannounced basis at a frequency that will assist the Warden/designee in assessing if the inmate is drug free.

a.    The names of individuals for random testing will be generated by computer, based on five percent (5%) of the population for a given unit.

b.    The computer-generated list will be distributed to the Warden/designee so that specimens can be collected at different days and times during the month.

2.    Inmates assigned to a community custody institution will be tested at a greater frequency.

3.    Inmates who appear or reported under the influence of drugs or alcohol may be tested.

AR 440 – January 5, 2006

4.    Testing an inmate for any reason other than the ones listed above must be approved by the Warden/designee.

5.    Inmates that test positive for a specific drug shall not be re-tested for that same drug any earlier than the time specified in the following chart:

| Substance Detection Periods | |
| --- | --- |
| Test Positive for: | Test after: |
| Amphetamines | 7 days |
| Barbiturates | 14 days |
| Benzodiazepines | 21 days |
| THC | 45 days |
| Cocaine | 7 days |
| Methadone | 7 days |
| Methaquadlone | 7 days |
| Opiates | 7 days |
| PCP | 14 days |
| Propoxyphene | 14 days |
| Hydrocodone | 7 days |
| LSD | 7 days |
| Alcohol | 3 days |

B.    Inmate Specimen Collection:

1.    Prior to collecting the urine specimen:

a.    The inmate will:

1)    Leave bags, containers, and outer garments outside the restroom.

2)    Wash their hands prior to urination.

b.    The collection process will be conducted by members of the same sex, in private, and outside the presence of other inmates or other non-involved staff.

c.    The collecting officer will:

1)    Receive on-the-job training on urine collection procedures.

2)    Secure and search the area where the urine specimen is collected, making sure the area is free of anything that could be used to contaminate the urine specimen.

3)    Place bluing dye/color in the toilet prior to testing.

3 of 12

4)      Positively identify the inmate by picture, name, and AIS number using the inmate identification card.

5)      Enter the following information on the ADOC Form 440-A, *Chain of Custody*: inmate's name, AIS number, race, sex, and if any medications (yes or no) were taken during the last month.

6)      Search the inmate to ensure the inmate cannot contaminate the urine specimen.

2.     Collecting the urine specimen:

     a.     ADOC on-site laboratory Drug-Testing Officers will not collect urine specimens.

     b.     The collecting officer will:

        1)     Observe the inmate giving the urine specimen during the entire process to ensure the inmate does not contaminate the urine specimen.

        2)     Collect at least one-half of a specimen cup of urine for testing, but not less than 30ml.

        3)     Remain with the inmate in the secure urine collection area until the urine specimen is adequately produced.

        4)     If inmate is unable to produce an adequate specimen:

           a)     Permit the inmate to drink eight ounces of water every thirty minutes, not to exceed 24 ounces.

           b)     The sound of running water may be used as encouragement.

           c)     A new specimen cup will be provided on each attempt.

        5)     An inmate who is unable to provide a urine specimen within three (3) hours of being ordered to do so:

           a)     Will be considered refusing to submit a urine specimen.

 

b)    Will be charged with a disciplinary violation for failure to obey a direct order to provide a urine specimen. The sanctions shall be the same or similar as a positive urine test.

3.    After collecting the urine specimen

a.    Secure the cap on the specimen cup.

b.    Place a label on the side of the cup and write the inmate's name, AIS number, race, and date the urine specimen was collected. This must match the information previously recorded on ADOC Form 440-A.

c.    Secure cap with tamper-proof evidence seal/evidence tape to avoid tampering or contamination. Write the inmate's name, AIS number, race, and date the urine specimen was collected on the evidence seal/evidence tape.

d.    Write corresponding ADOC Form 440-A line number on the cup label and the evidence seal/evidence tape on the cap.

e.    The inmate will observe the collection process.

C.    Specimen Storage And Transportation

1.    An ADOC Form 440-A, *Chain of Custody*, <u>must</u> always be maintained with each urine specimen collected. The chain begins with the inmate providing the urine specimen, next the collecting officer, and then the transporting officer or the officer operating the drug testing equipment. This chain of custody should be kept to a minimum to prevent possible contamination.

2.    A locked container will be used to hold specimens at the collection point and during transportation to the testing site. The locked container will be held in a secure area. Only the collection site shift commander and laboratory testing officer will have access to the specimen container key. The ADOC Form 440-A will reflect placing into and removing specimens from secure storage.

3.    If the urine specimen is not tested within twenty-four (24) hours after collection, the container holding the urine specimen must be placed in a locked and secure refrigeration unit. Only the shift commander will have access to the key locking the refrigeration unit.

AR 440 – January 5, 2006

4.    All ADOC on-site laboratory tests must be completed within seven (7) days of collection.

D.    Inmate Specimen Testing

1.    Only ADOC laboratory Drug-Testing Officers will have access to urine specimens stored in the laboratory or be present in the laboratory while drug tests are being conducted.

2.    All testing of urine specimens using test sticks and/or panels will be conducted in accordance with the manufacturer's instruction.

3.    All testing of urine specimens using the analyzer will be conducted in accordance with the operating instructions for the equipment.

4.    Laboratory Drug-Testing Officers will:

   a)    Ensure that all information recorded on the urine specimen cup corresponds to the information recorded on the ADOC Form 440-A.

   b)    Ensure that all specimens collected are sealed and the proper chain of custody has been maintained. Laboratory Drug-Testing Officers will not test specimens if the chain of custody has been broken or the specimen submitted appears compromised.

   c)    Complete and submit an ADOC Form 302, *Incident Reporting*, anytime a urine specimen is declined and not tested.

   d)    Give the benefit of doubt to the inmate being tested. A positive result will be re-tested for verification using a new specimen of urine from the original specimen container. Verified positive results will be sent to an outside independent laboratory for confirmation testing.

5.    Each institution will promptly be notified of any inmate initially testing positive at an on-site drug laboratory. Any inmate, who initially tests positive, shall have their current custody status reviewed. Specimen verification reports will not be forwarded to the sending institution until a confirmation report has been received from the outside independent toxicology laboratory. Disciplinary action will not be initiated on an inmate until a positive confirmation specimen report is received from outside independent laboratory confirmation testing.

E.    Independent Laboratory Confirmation Testing

1.    An off-site ADOC contracted independent laboratory that is certified by the Substance Abuse and Mental Health Services Administration (SAMHSA) or

AR 440 – January 5, 2006

accredited through the *College of American Pathologists* (CAPS) will conduct confirmation testing.

2. The ADOC laboratory Drug-Testing Officer will send a portion of the specimen and a signed specimen control form requesting confirmation of the suspected controlled substance utilizing gas chromatography/mass spectrometry (GC/MS) testing.

    a. The off-site ADOC contracted independent laboratory will supply materials for packaging and mailing the specimen.

    b. The appropriate identification items from the ADOC Form 440-A and the inmate's specimen container will be transferred to the off-site ADOC contracted independent laboratory specimen package including the supplied chain of custody form.

3. If the specimen is confirmed positive, the cost of the independent laboratory confirmation testing will be charged to the inmate's prisoner money on deposit account (PMOD). The cost to the inmate is determined by the current contract for the independent laboratory. The Accounting Division will notify wardens and business managers of the current contract cost. Otherwise the Institution Contingency Fund (ICF) will pay for the test.

4. If the specimen is confirmed negative by the off-site ADOC contracted independent laboratory, the cost of the independent analysis will be paid from the ICF and not by the inmate.

F. Confirmed Positive Urinalysis

1. The ADOC Drug Testing Officer will forward the ADOC Form 440-B, *Individual Specimen Report*, for each inmate testing positive to the inmate's institution and the Director of Treatment.

2. Disciplinary action, see AR 403, *Disciplinary Hearing Procedures for Major Rule Violations*, will be initiated by the officer who collected the specimen or the shift commander.

3. If the investigating officer will consult the ADOC Director of Treatment to resolve questions about medication the inmate took prior to testing that could cause a positive result.

4. A weekly computer file will be made by each testing center on a computer disk after the last test run each Thursday and transmitted by 3:00 p.m. to Information Systems Division so the results can be automatically recorded in the Department's computerized data base.

AR 440 – January 5, 2006

5.    Any problems with the drug testing equipment, data management system, or products **must** be immediately reported to the vendor. If the problems are not resolved within one (1) working day, the Director of Treatment will be contacted.

6.    Inmates who test positive will be referred to their classification specialist for referral to an appropriate substance abuse treatment program.  These efforts will be noted in the inmate's institutional file.  Volunteering for treatment is not a bar from disciplinary action.

7.    Inmates who test positive will be closely monitored, escape potential re-evaluated, and security level reviewed for increased security, if necessary and/or appropriate.

8.    Community custody inmates who test positive for drug use (other than alcohol or marijuana) will be returned to a major institution <u>on the first offense</u> for reclassification.

G.    Treatment for Inmates Testing Positive

1.    Community custody inmates who test positive for using alcohol or marijuana <u>for the first time</u> may remain at the work release institution for drug treatment.  If substance abuse treatment is not available at that institution, the inmate will be transferred to the least-restrictive institution that has a drug treatment program.

2.    Other custody inmates eligible for general population who test positive for alcohol or drugs may be assigned to locally available, Alcoholics Anonymous (AA)/Narcotics Anonymous (NA), treatment programs, or workshops.

3.    The drug treatment counselor will develop an individualized treatment plan that addresses the inmate's substance abuse issues.  Treatment plans will include attendance at Alcoholics Anonymous (AA)/Narcotics Anonymous (NA) meetings, and structured study including drug abuse videos and pamphlets.

4.    Community custody inmates who test positive for alcohol or marijuana after having completed a substance abuse program, will be entered into a Relapse Prevention program.

5.    If the community custody inmate tests positive a subsequent time, the inmate will be returned to a major institution for reclassification and appropriate treatment program.

6.    Although any inmate can refuse drug treatment, the refusal will be recorded in the inmate's institutional file.  Refusal may preclude participation in programs that the inmate otherwise would have been eligible.

H.    Drug Testing Supplies

1.    Each ADOC drug-testing center will order necessary drug testing supplies through the Office of the Director of Treatment.  Immediately upon receipt of drug testing supplies, the shipment will be checked against the packing slip and any discrepancies resolved with the vendor. After any discrepancies have been resolved, a copy of the packing slip certifying that all items have been received will be mailed or faxed to the Director of Treatment.

2.    ADOC institutions will request specimen containers and evidence seals from their assigned drug-testing center.

3.    The one-step testing devices (test sticks and multiple panels) used by community-based institutions will be ordered and distributed by the Director of Treatment.

4.    Drug testing centers will keep a copy of all receipts for testing supplies received for one (1) year.

VI.    **DISPOSITION**

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

VII.    **FORMS**

A.    ADOC Form 440-A, *Chain of Custody.*

B.    ADOC Form 440-B, *Individual Specimen Report.*

VIII.    **SUPERCEDES**

This AR supercedes AR 440 dated September 16, 2002.

AR 440 – January 5, 2006

IX.   **PERFORMANCE**

    A.    <u>Code of Alabama 1975</u>

    B.    National Commission on Correctional Health Care: Standards for Health Care in Prisons, 2003.

    C.    Standards of the *College of American Pathologists*.

    D.    Substance Abuse or Mental Health Services Administration (SAMHSA)

Donal Campbell, Commissioner

AR 440 – January 5, 2006

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## CHAIN OF CUSTODY

Name of Institution: _____ Inst. Code: _____

Date: _____ Time Specimens Delivered: _____

| | First | Last | Time of Collection | AIS # | Race | Sex (M-F) | Medications (Yes or No) |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |

**OUR INSTITUTION REQUESTS THE ABOVE NAMED INMATE (S) BE DRUG SCREENED
AND THE RESULTS OF ALL POSITIVE TESTS BE REPORTED VIA PHONE CALL WITH
PAPERWORK TO FOLLOW.**

There are a total of _____ specimens to be tested.

From:  (The above Inmates)   To: _____ Date: _____ Time: _____
From: _____   To: _____ Date: _____ Time: _____
From: _____   To: _____ Date: _____ Time: _____
From: _____   To: _____ Date: _____ Time: _____
From: _____   To: _____ Date: _____ Time: _____
From: _____   To: _____ Date: _____ Time: _____

**RETAIN THIS FORM FOR ONE YEAR**

**ADOC Form 440-A – December 14, 2005**

11 of 12

AR 440 – January 5, 2006

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INDIVIDUAL SPECIMEN REPORT

Name:                                    Printed:

ID:                                      Specimen ID:

Posted By:                               Collection Date/Time:

Date Posted:                             Chain of Custody:

Test Name:                          Outcome

**Drug Screen**

Alcohol                             ALC
Cannabinoid                         THC
Cocaine                             COC

**Outcome:**

**Reviewed By:**                              **Print Date:**

**Signed:** _____

Results approved by: _____    Date: _____

Copy Received by Inmate: _____ AIS # _____ Date: _____

## RETAIN THIS FORM FOR ONE YEAR

**ADOC Form 440-B – December 14, 2005**

AR 440 – January 5, 2006



**BOB RILEY**
GOVERNOR

# State of Alabama
# Alabama Department of Corrections

101 South Union Street
P. O. Box 301501
Montgomery, AL 36130-1501

**DONAL CAMPBELL**
COMMISSIONER

January 26, 2006

TO: WARDENS
     HEADS OF STATE AGENCIES
     DIVISION HEADS
     ADMINISTRATIVE REGULATION MONITORS

CHANGE #1
ADMINISTRATIVE REGULATION 440

### INMATE DRUG SCREENING

PURPOSE:    Publish revised ADOC Form 440-A, *Chain of Custody.*

CHANGES TO BE MADE:

| **Reference** | **Action Required** |
|---|---|
| AR 440, *Inmate Drug Screening,* dated January 5, 2005. | |
| Page 11 | Remove ADOC Form 440-A, *Chain of Custody,* dated January 5, 2006 and insert attached ADOC Form 440-A, dated January 26, 2006. |

     File this numbered change at the back of the regulation after annotating both the index and the regulation to indicate the required changes have been completed.  Advise all personnel in your organization of the change to this regulation.

Donal Campbell, Commissioner

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## CHAIN OF CUSTODY

Name of Institution: _____    Inst. Code: _____

Date: _____    Time Specimens Delivered: _____

| | First | Last | Time of Collection | AIS # | Race | Sex (M-F) | Medications (Yes or No) |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |

OUR INSTITUTION REQUESTS THE ABOVE NAMED INMATE (S) BE DRUG SCREENED AND THE RESULTS OF ALL POSITIVE TESTS BE REPORTED VIA PHONE CALL WITH PAPERWORK TO FOLLOW.

There are a total of _____ specimens to be tested.

| From: | (The above Inmates) | To: | _____ | Date: | _____ | Time: | _____ |
|---|---|---|---|---|---|---|---|
| From: | _____ | To: | _____ | Date: | _____ | Time: | _____ |
| From: | _____ | To: | _____ | Date: | _____ | Time: | _____ |
| From: | _____ | To: | _____ | Date: | _____ | Time: | _____ |
| From: | _____ | To: | _____ | Date: | _____ | Time: | _____ |
| From: | _____ | To: | _____ | Date: | _____ | Time: | _____ |

**RETAIN THIS FORM FOR ONE YEAR**                    ADOC Form 440-A – January 26, 2006

AR 440 – January 5, 2006